[No. 15697-7-I. Division One. April 13, 1987.]

THE STATE OF WASHINGTON, *Respondent*, v. MARK
RICHARD MOON, *Appellant*.

*Mark W. Muenster* and *Rita J. Griffith* of *Washington Appellate Defender Association*, for appellant.

*Norm Maleng, Prosecuting Attorney, Deborah J. Phillips, Senior Appellate Attorney*, and *Ruth Robinson, Deputy*, for respondent.

GROSSE, J.—The appellant, Mark Richard Moon, appeals his convictions on four counts of robbery and one count of first degree kidnapping. The facts will not be restated except as necessary to an understanding of our reasons for resolution of the issues. The issues raised are as follows:

1. Was the appellant's arrest illegal such that evidence obtained as a result thereof should have been suppressed?

2. Were the out-of-court identifications by two of the appellant's victims so impermissibly suggestive as to require their suppression?

3. Did the trial court err in refusing to permit expert testimony on the reliability of eyewitness identification?

4. Are the written findings of fact and conclusions of law with respect to one of the robbery counts sufficient that a rational trier of fact could conclude beyond a reasonable doubt that the appellant was guilty of the charge?

The facts surrounding appellant's arrest are set forth in *State v. Moon*, 45 Wn. App. 692, 726 P.2d 1263 (1986). In the instant matter, the investigating officers were justified under the facts and circumstances known to them to hold

Moon while the victim of the minimart robbery was brought to the scene. *State v. Williams,* 102 Wn.2d 733, 739–40, 689 P.2d 1065 (1984). The reports of the orange Toyota automobile; the timing of the robbery; the warm car engine; the misstatements made by Jones as to who was in the apartment; and the fact that Moon matched descriptions that were circulated to the police officers as the perpetrator of north end robberies, taken together, justified the interference with Moon's freedom. His detention was reasonably related in scope since the detention was relatively brief and Moon was detained in his own motel room. The investigation focused on the owner of the suspect car and on Moon who was linked to the robberies. The less than 20 minutes that it took to transport the victim to the motel room was not excessive under the circumstances. *See Williams,* at 740–41. Moon admits that the police had probable cause to arrest him after he was identified by victim Hawkins. The appellant was not illegally detained or arrested.

■ Moon attacks the out–of–court identifications of the victim in the minimart robbery that led to his arrest. The victim, Hawkins, identified him at a showup at the Crest Motel where he was initially detained and arrested. He also challenges the identification by victim Bjornson which involved both a photo montage and a lineup. The issue of victim Hawkins' identification is readily resolved. Assuming without deciding that the showup identification and Hawkins' in–court identification were impermissibly suggestive, there is other overwhelming evidence of guilt. Moon admitted at trial committing the robbery with a plastic knife. In addition, his companion at the time of his arrest testified at trial that Moon committed the robbery. Error, even of constitutional magnitude, is not reversible unless the appellate court has a reasonable doubt as to whether a reasonable jury would have reached the same result in the absence of the error. *See State v. Guloy,* 104 Wn.2d 412, 705 P.2d 1182 (1985), *cert. denied,* 475 U.S. 1020 (1986). We do not entertain such doubts. The appellant's assignment of error

with regard to the out–of–court identification of the victim Hawkins is without merit.

 The second issue of victim Bjornson's identification from the montage and the lineup is more complicated. The standard for both a photographic montage and a lineup procedure is whether the identification procedure was so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968); *State v. Hewett,* 86 Wn.2d 487, 545 P.2d 1201 (1976). The montage and lineup in this case were not suggestive. The photographs were of individuals who resembled each other and the lineup was composed of individuals who had similarities. The fact that raises the question of suggestiveness was a concession that the police told the witness that she had not chosen the suspect in the lineup and that they told her that Moon's image appeared in both the montage and the lineup. A 2–part inquiry is required: (1) was the confrontation procedure suggestive, and (2) under the totality of the circumstances was the identification reliable even if the confrontation procedure was suggestive. *See Manson v. Brathwaite,* 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243 (1977); *Neil v. Biggers,* 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375 (1972); *State v. McDonald,* 40 Wn. App. 743, 700 P.2d 327 (1985).

The facts of the instant case indicate that the confrontation procedure was not impermissibly suggestive. The reason the photo montage was utilized was because of Bjornson's statement that the robber had a moustache and because of Moon's alteration of his appearance. Bjornson testified that she did not know whether individuals from the lineup were also in the montage. The fact that she chose another individual from the lineup may indicate a focus on that individual and may actually cut against the suggestiveness of the following photo montage. While Moon cites many cases to support his contention that the process was suggestive, *State v. Hilliard,* 89 Wn.2d 430, 573 P.2d 22 (1977) is controlling. Hilliard had shaved off his beard

before a lineup. The witness identified another person in the lineup and was shown a photo montage 2 weeks later. The police officer told her that one of the lineup participants was in the montage. The Supreme Court held that neither the comment of the officer nor the omission of a photo of the person initially picked from the lineup detracted from the objectivity of the montage procedure. Even if one could say that that process used in Moon's case was suggestive, the totality of the circumstances indicates that Bjornson's identification was reliable despite that suggestiveness. Bjornson testified that she was 2 feet away from Moon, that he was unarmed, and that he did not have sunglasses or a hat on. She had ample opportunity to view him and her description of him before the identification procedures generally matched Moon's physical appearance. Bjornson was focusing her attention on the robber at the time of the crime. The crime took place on July 30, 1984, and the montage and lineup occurred on August 7, 1984, which is a short period of time. When she identified Moon's picture from the montage she indicated certainty and she was equally certain in her identification of him at trial. It is, of course, the in–court identification testimony that is material and we believe that even if we were to label the initial out–of–court identification procedure as suggestive the in–court identification was admissible under the factors set out in *Neil v. Biggers,* as restated in *Manson v. Brathwaite, supra; see State v. McDonald, supra.*

■ Our recent decision in *State v. Moon* is dispositive of the issue of whether expert testimony is admissible on the reliability of eyewitness identification. In *Moon,* identification was the principal issue at trial. Jones presented an alibi defense and there was little or no other evidence linking him to the crimes with which he was charged. Moon, on the other hand, charged with participation in the same crimes, cannot make similar claims. Although he tried to establish an alibi there is substantial other evidence linking Moon to the crimes. The victim's car keys and hat were found in his possession and were identified by her husband

as having been in her car. Moon's explanation of his possession of these items makes absolutely no sense. More importantly, the victim was very close to Moon and had a long period of time in which to observe him during the course of events constituting the crime. Under these circumstances, the trial judge would have had good and ample reason to refuse the expert testimony pursuant to ER 702.

The issue with respect to the adequacy of the findings and conclusions is troublesome. After hearing the evidence the trial court made the following oral ruling:

[THE COURT:] I have a reasonable doubt as to the deadly weapon. Accordingly, I will find him guilty of second degree.

Jody Hawkins was quite an unusual witness, was unable to identify this knife, which is Exhibit 20, as being one the defendant carried, and I feel that the State has not proved beyond a reasonable doubt that he was armed with a deadly weapon. Her testimony was that somehow she got cut, as I recall it. She said she was cut on the hand, but she doesn't know how. Thinks it was while struggling. That, to me, is not proof beyond a reasonable doubt. Accordingly, that's the Court's finding.

Ms. ROBINSON: May I address the Court on that last finding, your Honor?

THE COURT: Go ahead.

Ms. ROBINSON: Is the Court finding him guilty of robbery in the second degree on that count, or robbery in the first degree?

THE COURT: Oh, pardon me. Robbery in the first, without the deadly weapon.

■■ The court signed written findings of fact 3 and 4 which read as follows:

The defendant was *armed with what appeared to be a knife* during the time he took the money from Ms. Hawkins.

(Italics ours.) Finding of fact 3.

A struggle ensued between defendant and Ms. Hawkins, during which she was cut on the hand.

Finding of fact 4.

RCW 9A.56.200 states:

(1) A person is guilty of robbery in the first degree if in the commission of a robbery or of immediate flight therefrom, he:

(a) Is *armed with a deadly weapon*; or

(b) *Displays what appears to be a firearm* or other deadly weapon; or

(c) Inflicts bodily injury.

(2) Robbery in the first degree is a class A felony.

(Italics ours.) A finding that Moon displayed what appeared to be a deadly weapon would support a conviction for first degree robbery. An appellate court is permitted to use the trial court's oral decision to interpret findings of fact and conclusions of law if there is no inconsistency. *State v. Eppens,* 30 Wn. App. 119, 633 P.2d 92 (1981). While the trial court's oral decision here indicates rejection of the deadly weapon charge against Moon, it also shows that the court found facts sufficient to constitute "display". The written findings confuse the requisites of the deadly weapons charge with requisites of first degree armed robbery. Moon testified he committed the robbery with a plastic knife. The victim testified that Moon displayed a knife but was unable to identify the knife offered by the State. The record and the trial court's opinion shows proof beyond a reasonable doubt that Moon, at least, displayed what appeared to be a knife. We do not treat the absence of a finding as to display as a negative finding because of the existence of uncontradicted evidence that Moon displayed what appeared to be a knife. *See LaHue v. Keystone Inv. Co.,* 6 Wn. App. 765, 496 P.2d 343 (1972). *See also State v. LaRue,* 5 Wn. App. 299, 487 P.2d 255, 65 A.L.R.3d 1299 (1971). Instead we use the oral decision to interpret the court's finding and we affirm the judgment and sentence.

SCHOLFIELD, C.J., and WEBSTER, J., concur.

Review denied by Supreme Court July 1, 1987.