[No. 26023-5-I. Division One. May 20, 1991.]

ROBERT JOHNSON PEPPER, ET AL, *Appellants,* v.
KING COUNTY, ET AL, *Respondents.*

*Camden M. Hall, Cynthia R. First,* and *Foster, Pepper & Shefelman,* for appellants.

*Norm Maleng,* Prosecuting Attorney, and *Joel R. Paisner,* Deputy, for respondent King County.

*Richard L. Martens* and *Waitt, Johnson & Martens,* for respondent J.J. Welcome Construction Company.

*Michael W. Babcock* and *Montgomery, Purdue, Blankinship & Austin,* for respondents Welcome.

*Mark R. Johnsen* and *Karr Tuttle Campbell,* for respondents Erbe.

*John G. Fritts* and *Wilson, Smith, Cochran & Dickerson,* for respondents Hatch.

*Gregory E. Keller, Lynne M. Cohee,* and *Hillis Clark Martin & Peterson,* for respondents Weyerhaeuser Company, et al.

*Ronald L. Berenstain, Ramer B. Holtan,* and *Perkins Coie,* for respondents Burlington Northern, et al.

AGID, J.—This appeal arises from an action for damages allegedly caused by defendants' unlawful and illegal collection, diversion and discharge of surface water, silt and gravel onto plaintiffs' properties. Plaintiffs appeal (1) the dismissal of their inverse condemnation claims against the private party defendants; (2) denial of their subsequent motion to amend their complaints to include three new

claims against the private party defendants based on inverse condemnation; and (3) denial of their motion for reconsideration of the trial court's denial of their motion to amend.

Plaintiffs Robert Pepper and the trust of his deceased wife (the Peppers) and plaintiffs Larry and Debra Jaffe (the Jaffes) own adjoining properties in the Snoqualmie Valley of King County to the west of Snoqualmie River and to the east of West Snoqualmie Valley Road N.E. (the adjacent road). To the west of the plaintiffs' properties and the adjacent road rises what is commonly known as "Novelty Hill", the eastern edge of an upland plateau that rises approximately 500 feet above the valley floor.

Defendants are King County (King County) and numerous private parties (the private party defendants) who allegedly own or have subdivided and developed property on the eastern portion of Novelty Hill. Plaintiffs essentially claim that the defendants' subdivision, development and other work on the eastern portion of Novelty Hill have caused an increase and change in flow of the surface water and related drainage from Novelty Hill. This in turn has allegedly caused unnatural quantities of surface water to flow down natural and unnatural water courses, drains and drainage channels on the eastern slope of Novelty Hill, across or under the adjacent road and onto plaintiffs' properties.

The Peppers filed suit against the defendants in King County Superior Court in October 1986 alleging negligence, private and public nuisance, trespass and unlawful civil conspiracy. They are seeking injunctive relief, damages, costs, attorney fees and status as third party beneficiary under any applicable insurance policies. The Jaffes filed a separate action making similar claims against the same defendants in September 1987. The cases were consolidated in May 1988.

Plaintiffs amended their complaints on several occasions through 1989 to add, delete and change the names of the parties. In July 1989, the plaintiffs again amended their

complaints adding, among other things, a cause of action for inverse condemnation against all defendants. Specifically, plaintiffs alleged:

> Defendants' joint and several actions, and especially the action of Defendant King County, constitutes a taking by inverse condemnation of the property of Plaintiffs for public purposes which, according to the United States and State constitutions, together with other applicable law, entitles Plaintiffs to just compensation from Defendants.

In October 1989, the private party defendants filed motions under CR 12(b)(6) to dismiss plaintiffs' inverse condemnation claims on the ground that there is no cause of action against a private party for inverse condemnation. The trial court granted the motions and entered separate orders dismissing plaintiffs' inverse condemnation claims against the private party defendants (the October 1989 order).

In February 1990, plaintiffs brought a joint motion to amend their complaints to add three new constitutionally based claims against the private party defendants. These three claims were, like the previously dismissed inverse condemnation claims, brought under the authority of Const. art. 1, § 16 (amend. 9) as well as under RCW 8.24 and 85.28, the relevant statutes implementing that constitutional provision.[1] After a March 21, 1990, hearing on the plaintiffs' motion to amend, the trial court denied the motion, holding that the three claims merely restated the plaintiffs' previously pleaded and dismissed claims of inverse condemnation (collectively, the March 1990 order). On April 11, 1990, the trial court entered an order denying plaintiffs' motion for reconsideration (the April 1990 order). Trial on the remaining claims is now set for June 15, 1991.

The plaintiffs appeal all three orders entered by the trial court, asserting that the trial court erred in dismissing their

---

[1]Plaintiffs also specifically realleged the inverse condemnation claim that had been dismissed by the trial court in October 1989 with one important change: "Defendants' joint and several actions . . . constitute a taking by inverse condemnation of the property of Plaintiffs for public *and private* purposes". (Italics ours.)

claims of inverse condemnation against the private party defendants and in denying both the joint motion to amend their complaints and the joint motion for reconsideration of the order denying the motion to amend.

## I
### APPEALABILITY OF THE ORDERS

Before we reach any of these issues we must first address the question, not raised by the parties, of whether any of the trial court's orders are final orders which are properly before the court on appeal at this time. *See generally Doerflinger v. New York Life Ins. Co.,* 88 Wn.2d 878, 567 P.2d 230 (1977); *Lindsay Credit Corp. v. Skarperud,* 33 Wn. App. 766, 657 P.2d 804 (1983). We hold that none of the orders is appealable at this stage in the proceedings.

In order to be appealable, orders determining fewer than all the issues presented in a case must comply with the requirements of CR 54(b)[2] and RAP 2.2(d).[3] These rules

---

[2]CR 54(b) provides:

"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties *only upon an express determination in the judgment, supported by written findings, that there is no just reason for delay and upon an express direction for the entry of judgment.* The findings may be made at the time of entry of judgment or thereafter on the court's own motion or on motion of any party. In the absence of such findings, determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." (Italics ours.)

[3]RAP 2.2(d) provides in pertinent part:

"In any case with multiple parties or multiple claims for relief . . . an appeal may be taken from a final judgment which does not dispose of all the claims . . . *but only after an express direction by the trial court for entry of judgment and an express determination in the judgment, supported by written findings, that there is no just reason for delay.* The findings may be made at the time of entry of judgment or thereafter on the court's own motion or on motion of any party. The time for filing notice of appeal begins to run from the entry of the required findings. In the absence of the required findings, determination and direction, a

require a determination by the trial court, supported by findings, that there is no just reason to delay the appeal until after trial on the remaining issues and an express direction by that court for entry of a final judgment.

Prior to September 1989, there were three requirements for the entry of final judgment by the trial court under CR 54(b):

> (1) There must be more than one claim for relief or more than one party against whom relief is sought; (2) there must be an express determination in the judgment that there is no just reason for delay; and (3) there must be an express direction for the entry of the judgment.

*Doerflinger*, 88 Wn.2d at 881; *see also Fox v. Sunmaster Prods., Inc.*, 115 Wn.2d 498, 503–04, 798 P.2d 808 (1990) (record must reveal some danger of hardship or injustice through delay that would be alleviated by immediate appeal). Effective September 1989, a fourth requirement was added when CR 54(b) and RAP 2.2(d) were amended to require that the determination of no just reason for delay be supported by written findings of fact. Initially, we must determine whether the orders in this case satisfy these prerequisites.

A
The March and April 1990 Orders

No written or oral order was entered with respect to immediate appeal of the denial of the April 1990 motion for reconsideration. It almost goes without saying, therefore, that the order denying reconsideration in no way complies with the requirements of CR 54(b) and RAP 2.2(d). Where there is no indication, written or oral, of the trial court's judgment on the issue of immediate appeal, this court cannot entertain a request for interlocutory review. *Doerflinger*, 88 Wn.2d at 882; *Schiffman v. Hanson Excavating Co.*, 82 Wn.2d 681, 513 P.2d 29 (1973).

---

judgment that adjudicates less than all the claims . . . is subject only to discretionary review until the entry of a final judgment adjudicating all the claims, counts, rights, and liabilities of all the parties." (Italics ours.)

■ ■ Similarly, the text of the March 1990 order does not contain a finding that there is no just reason for delay or direct entry of final judgment as to the denial of plaintiffs' motion to amend. As a result, the appellate court lacks jurisdiction to hear the appeal of that order as well. *Schiffman,* 82 Wn.2d at 688–89.[4]

This is true even though we can discern from the trial court's oral opinion that it would have found no just reason for delay and directed entry of a final judgment with respect to the rejected motions to amend. The *Schiffman* court expressly held that parties could not rely on the trial court's oral finding that there was no just reason for delay to cure the failure to comply with the requirement that the finding be in writing. 82 Wn.2d at 689–90. *Schiffman* requires that the finding and direction for entry of a final judgment be in writing in order to avoid "the confusion and uncertainty, as well as the loss of time and the expense that can result" from ambiguities in the record as to whether the trial court in fact intended to exercise its discretion to certify an interlocutory appeal. *Schiffman,* 82 Wn.2d at 689. Although in this case we have the actual transcript of the trial court's oral decision, as opposed to the affidavit presented in *Schiffman,* that does not change the result.

> In any event, an oral certification of appealability does not satisfy the requirements of CR 54(b). There must be something in writing, certified by the judge who tried the case, which an appellate court can look at and determine immediately whether the appeal is timely.

*Schiffman,* 82 Wn.2d at 690.

RAP 5.1(c) provides that a notice of appeal of a decision that is not appealable will be treated as a notice for discretionary review. However, none of the orders at issue here

---

[4]*See also Surrey Downs Comm'ty Club v. Bellevue,* 14 Wn. App. 801, 802, 545 P.2d 24 (1976) (the requirements of a finding of no just reason for delay and an express direction for entry of final judgment are mandatory and an appeal must be dismissed when those requirements are not met).

meets the requirements for discretionary review of a superior court decision.[5] The trial court did not commit "obvious" or "probable" error which "substantially alters the status quo" or departs "from the accepted and usual course of judicial proceedings" as required by RAP 2.3(b).[6]

■ Because the April 1990 order fails to meet any of the requirements for either direct or discretionary review, the appeal of the trial court's denial of the motion for reconsideration must be dismissed. *Schiffman*, 82 Wn.2d at 690. While we could remand the March 1990 order denying the motion to amend for entry of an order and findings reflecting the trial court's oral opinion, RAP 2.2(d), in view of our analysis of the issue in part II of this opinion, a remand

---

[5] Our research has located a few instances in which review has been granted despite an apparent failure to comply with the rules or satisfy the requirements for discretionary review. These are unusual situations not presented by the circumstances here. *See, e.g., State v. Campbell,* 112 Wn.2d 186, 190, 770 P.2d 620 (1989) ("In view of the posture of this case [appeal from judgment imposing death sentence] and in the interests of justice, we accept review and proceed to the merits."); *In re Chubb,* 52 Wn. App. 541, 543–44, 762 P.2d 352 (1988) (discretionary review of a case presenting "several constitutional questions" but, by affirming trial court, indicating no finding of "probable" or "obvious" error.), *aff'd,* 112 Wn.2d 719, 773 P.2d 851 (1989).

[6] There is no obvious or probable error in the trial court's ruling in part because the historic reasons for allowing an inverse condemnation claim against the government do not apply to private entities against whom a tort action may be brought. The government, as opposed to private individuals, has an inherent right to take property for public purposes, and no constitutional or statutory authority is required to confer this right. *Kincaid v. Seattle,* 74 Wash. 617, 621, 134 P. 504 (1913). Therefore, when the government takes private property for public purposes and fails to initiate formal condemnation proceedings, the government cannot be held liable as a trespasser or tortfeasor. *Brazil v. Auburn,* 93 Wn.2d 484, 491, 610 P.2d 909 (1980) (citing *Great Northern Ry. v. State,* 102 Wash. 348, 353, 173 P. 40 (1918)). The theory of inverse condemnation was created by the courts to provide a remedy for a property owner whose property has been appropriated by the government and the government has been recalcitrant in its duty to initiate formal condemnation proceedings. *See Kincaid,* 74 Wash. at 626; *Martin v. Port of Seattle,* 64 Wn.2d 309, 318, 391 P.2d 540 (1964), *cert. denied,* 379 U.S. 989 (1965). Because the government could not be sued in tort, inverse condemnation was developed to provide a remedy where none previously existed. 3 J. Sackman, *Nichols on Eminent Domain* § 8.1[4], at 8–32 to 8–33 (3d ed. 1989).

would be futile. The appeal of the March 1990 order is therefore dismissed.

## B
## The October 1989 Order

Although the October 1989 order contains none of the language required by CR 54(b), the March 1990 order does expressly direct the entry of final judgment as to the October 1989 order, and states that there is no just reason for delay. It fails, however, to make any findings in support of this conclusion.[7]

No Washington case has yet discussed the new requirement that a "no reason for delay" determination be supported by *written* findings. The word "finding" in its singular form was included in RAP 2.2(d) prior to the 1989 amendment where it referred to the requirement that the trial court enter "a written finding that there is no just reason for delay."[8] The words "finding" or "findings" did not

---

[7]With respect to the October 1989 order dismissing the plaintiffs' inverse condemnation claims, the March 1990 order recites the following:

"It would not be appropriate to allow plaintiffs to file a subsequent motion pursuant to CR 54(b) to revise the court's previous orders dismissing with prejudice plaintiffs' claim of inverse condemnation due to the absence in those orders of an express determination that there is no just reason for delay and an express direction for the entry of final judgment. The court finds that its prior orders dismissing plaintiffs' claim of inverse condemnation against the private party defendants should be revised to include the express determinations and directions for a final judgment as required by CR 54(b)." The order further provides:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the court's previous orders entered on or about October 16, 1989 dismissing with prejudice plaintiffs' claim of inverse condemnation against the private party defendants shall be, and they hereby are, revised to include an express determination that there is no just reason for delay and to direct the entry of a final judgment dismissing those claims against the private party defendants."

[8]Prior to 1989, the pertinent language of RAP 2.2(d) read:

"In any case with multiple parties or multiple claims for relief, . . . an appeal may be taken from a final judgment which does not dispose of all the claims . . . but only after an express direction by the trial court for entry of judgment and *a written finding that there is no just reason for delay. The finding* may be made at the time of entry of judgment or thereafter on the court's own motion or on motion of any party. The time for filing notice of appeal begins to run from the entry of *the required finding.* In the absence of *the required finding,* a judgment

appear in CR 54(b) prior to the amendment.[9] The change in the text of both rules and the express references to "findings" in its plural form in the text of both current versions of the rules leave no doubt that the drafters were referring to the findings which are now required to support the determination that there is no just reason for delay.

If the September 1989 amendments to CR 54(b) and RAP 2.2(d) are to have any meaning, the cursory statement in the March 1990 order cannot be deemed adequate to meet the requirement of written findings. *See National Bank of Wash. v. Dolgov*, 853 F.2d 57, 58 (2d Cir. 1988) (dismissing appeal under Fed. R. Civ. P. 54(b) because the order "merely repeated the language of Rule 54(b) in haec verba"). Although denominated a "finding" in the March 1990 order, the statements in the order are not what the drafters of the rule amendments intended to elicit when they added the requirement that the trial court make written findings in support of its determination that there is no just reason for delay. Rather, "[t]he amendment was motivated by the fact that review is difficult when the trial judge simply makes conclusory statements in support of the entry of the judgment." 4 L. Orland, Wash. Prac., *Rules Practice* § 5632, at 81 (3d ed. supp. 1991).

Having concluded that the amended rules require more than was included in the March 1990 order to satisfy

---

that adjudicates less than all the claims . . . is subject only to discretionary review until the entry of a final judgment adjudicating all the claims, counts, rights, and liabilities of all the parties." (Italics ours.) 112 Wn.2d 1111–12.

[9]The pertinent portion of former CR 54(b) provided:

"When more than one claim for relief is presented in an action . . . the court may direct the entry of a final judgment as to . . . fewer than all of the claims or parties only upon an express determination in the judgment, that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims . . . shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." 71 Wn.2d cxiii (1967).

the requirement for supportive written findings, we must therefore determine whether failure to comply with the requirement for written findings deprives the appellate court of jurisdiction over an interlocutory appeal. We hold that the requirement for supportive findings is not jurisdictional and that noncompliance will not always require dismissal of an interlocutory appeal.

The purpose of requiring findings to support the determination is to inform the appellate court of the reasons on which the trial court based its exercise of discretion in determining that, despite the policy against piecemeal appeals, this particular appeal should nevertheless proceed. *Doerflinger,* 88 Wn.2d at 882; *Fox,* 115 Wn.2d at 503–04; *Lindsay Credit Corp.,* 33 Wn. App. at 772. As the Supreme Court recently observed in *Fox,*

> *Doerflinger* holds that a CR 54(b) certification will not be accepted by an appellate court unless there is a demonstrated basis for the trial court finding of no just reason for delay. This means that the record must affirmatively show there is in fact some danger of hardship or injustice that will be alleviated by an immediate appeal.

(Citations omitted.) 115 Wn.2d at 503. The Washington State Bar Association Board of Governors' comment indicates similar reasons for the rule amendments.

> The use of written findings, therefore, was deemed to be an appropriate mechanism to assist the appellate court in its review of the trial court's rule 54(b) determination, and to force the parties in the trial court to make a showing of how the absence of a prompt appeal would result in possible "hardship or injustice through delay."

2A L. Orland & K. Tegland, Wash. Prac., *Rules Practice* § 3061, at 229 (3d ed. supp. 1990).

In an analogous area, numerous cases have held that, where the trial court fails to make a finding necessary to appellate review, the court may look to the trial court's oral opinion and to the record below and need not remand

where the opinion or the record is clear.[10] Indeed, in *Fox* the court clearly indicated that it would look to the record to determine whether it "affirmatively show[s]" the required hardship or injustice, and ultimately ruled the interlocutory order nonappealable at least in part because *"[n]othing in the record here* suggests that delay in entry of a final judgment posed any such danger of hardship". (Italics ours.) 115 Wn.2d at 503.

Thus, we conclude that, where the trial court's opinion or the record certified to the appellate court clearly demonstrates the reasons relied upon by the trial court for determining that there is no just reason for delay, and where there is a written determination and direction for entry of a final judgment, the appellate court has jurisdiction to entertain the appeal and consider whether those reasons satisfy the test for immediate review set out in *Schiffman* and *Lindsay*.

## II
### APPLICATION OF THE *SCHIFFMAN/LINDSAY* FACTORS

In *Doerflinger,* the Supreme Court made it clear that the appellate court must independently determine whether the tests for entry of final judgment under CR 54(b) have been met. 88 Wn.2d at 881. Unfortunately for the parties to this appeal, neither the trial court's oral opinion nor the record allows us to conclude that there is "no just reason for delay" and that an immediate appeal should be taken in this case. The factors relevant to this determination include:

---

[10]*Goodman v. Darden, Doman & Stafford Assocs.*, 100 Wn.2d 476, 481, 670 P.2d 648 (1983) (court may "look to the oral decision to clarify" trial court's theory); *Lambert v. Lambert,* 66 Wn.2d 503, 508, 403 P.2d 664 (1965) (findings required, but court may look to recitals in order and memorandum opinion for basis of trial court's decision); *Cogswell v. Cogswell,* 50 Wn.2d 597, 601–02, 313 P.2d 364 (1957) (lack of findings not critical where record reveals no dispute as to pertinent facts); *State v. Moon,* 48 Wn. App. 647, 653, 739 P.2d 1157 (1987) (court may refer to oral decision "to interpret the [trial] court's finding"); *LaHue v. Keystone Inv. Co.,* 6 Wn. App. 765, 775–76, 496 P.2d 343 (appellate court may look to the record to find undisputed facts), *review denied,* 81 Wn.2d 1003 (1972).

> (1) [T]he relationship between the adjudicated and the unadjudicated claims, (2) whether questions which would be reviewed on appeal are still before the trial court for determination in the unadjudicated portion of the case, (3) whether it is likely that the need for review may be mooted by future developments in the trial court, (4) whether an immediate appeal will delay the trial of the unadjudicated matters without gaining any offsetting advantage in terms of the simplification and facilitation of that trial, and (5) the practical effects of allowing an immediate appeal.

*Lindsay Credit Corp.*, 33 Wn. App. at 772 (quoting *Schiffman*, 82 Wn.2d at 687). Based on those factors, review of the trial court's October 1989 order of dismissal is not appropriate at this time.[11]

We experience some difficulty in applying the first two factors to the record in this case. Although the facts underlying the adjudicated and the unadjudicated claims are perhaps the same, we are unable on the record before us to determine exactly what the elements of plaintiffs' proposed cause of action would be. No Washington case or statute outlines the elements of a claim of inverse condemnation against a private condemnor and, as described by counsel, the distinction between the proposed inverse condemnation cause of action and the plaintiffs' trespass claims is not immediately apparent.

Although this claim is not still before the trial court for adjudication because of the dismissal order, it would appear that the facts underlying the proposed cause of action are still pending as part of plaintiffs' trespass, negligence and nuisance causes of action. If plaintiffs do not obtain full relief at trial and this issue is again before us, the appellate court will at least have a record on which to determine whether the traditional tort claims provide plaintiffs with a satisfactory avenue for seeking damages for the private defendants' alleged interference with their property rights. We understand that only an inverse condemnation claim would arguably allow plaintiffs to recover attorney fees if

---

[11]Discretionary review of the October 1989 order is not available for the reasons set forth at pages 346–47 and footnote 6.

they prevailed,[12] but plaintiffs have suggested no policy reason which supports creating a cause of action at the interlocutory appeal stage solely or primarily to provide an avenue for recovery of fees.

As for the third factor, if plaintiffs prevail on any of their pending tort claims, the issue presented here would likely be moot, with the possible exception of a claim for attorney fees for the proposed inverse condemnation claim. Because the trial in this matter is now set for June 15, 1991, further review of this issue would obviously delay the trial and, as indicated above, would not appear to simplify it. Thus, the fourth factor militates against granting review.

Finally with regard to the fifth factor, no other "practical effects" of allowing an immediate appeal have been brought to our attention. We do note, however, that as of the date of oral argument, no danger of hardship or injustice has been alleged in either this court or the trial court. We read *Fox* as equating such a showing with the fifth of the *Schiffman/Lindsay* factors. In any event, a showing of hardship or prejudice is crucial, and its absence would normally preclude review at this stage.[13]

In summary, we hold that the April 1990 order denying reconsideration cannot be reviewed because it meets none of the requirements of CR 54(b) or RAP 2.2(d). The March 1990 order denying the motion to amend, which contains no written determination or direction for entry of judgment, is not reviewable under *Schiffman* in the absence of a remand

---

[12]In 1988 the Legislature amended RCW 8.24.030, which governs private condemnation actions, to allow a court to award costs and attorney fees "[i]n any action brought under the provisions of this chapter for the condemnation of land *for a private way of necessity*". (Italics ours.) This language is ambiguous in the context of the statute, and it is unclear whether or not the Legislature intended to authorize attorney fees and costs for "drains, flumes or ditches" in addition to private ways of necessity.

[13]Counsel indicated at oral argument that a motion to dismiss some of the tort claims on statute of limitation grounds may be brought in the trial court. If such a motion were granted, we would be facing a different situation. However, we can neither anticipate nor speculate on whether a motion to dismiss will be brought or granted and if so, which claims will remain.

to the trial court. Even if we were to remand the March 1990 denial of the motion to amend, neither that order nor the October 1989 order dismissing the original inverse condemnation claim against the private party defendants satisfies the *Schiffman/Lindsay* factors, as explicated in *Fox*. Finally, there is no basis on which to grant discretionary review of the trial court's orders. Therefore, we are constrained on the current record to dismiss the appeal and remand the case to the trial court for further proceedings.

GROSSE, C.J., and PEKELIS, J., concur.