6 P.3d 22 (2000)
101 Wash.App. 517
NELBRO PACKING COMPANY, a Washington corporation, Respondent,
v.
BAYPACK FISHERIES, L.L.C., a Washington limited liability company, Petitioner,
British Columbia Packers, LTD., a Canadian corporation, Third-Party Defendant.
No. 46051-0-I.
Court of Appeals of Washington, Division 1.
June 19, 2000.
Publication Ordered and Reconsideration Denied July 25, 2000.
*24 David Florian Jurca, Richard Stephen White Helsell Fetterman LLP, Seattle, for Petitioner.
Frederick Philip Corbit, Dexter A. Washburn, Seattle, for Respondent.
*23 PER CURIAM.
The trial court certified orders it entered on summary judgment as final under CR 54(b). Because the court's reasons for certification do not support the decision and were untenable, the judgments are not appealable, and we dismiss the appeal.
Baypack sued Nelbro and its parent companies in Alaska, seeking damages for breach of contract, breach of the covenant of good faith and fair dealing, tortious interference, "lender liability," and fraud. Nelbro counterclaimed for the balance due on a note and moved to dismiss on forum non conveniens grounds. The motion to dismiss was denied, discovery proceeded, and the court granted summary judgment for Nelbro on its note.
Over a year later, Nelbro renewed its motion to dismiss based on forum non conveniens grounds, and the Alaska court granted the motion in September 1998. Baypack appealed, but before the Alaska Supreme Court decided the appeal, Nelbro sued Baypack in King County to collect on its note. Baypack filed compulsory counterclaims and later also initiated its own suit in King County, alleging the same claims it alleged in Alaska. The two King County actions were consolidated and assigned to a superior court judge. Baypack moved to stay the King County action pending a decision on its appeal in Alaska, but the motion was denied, and this court denied discretionary review.
The judge dismissed on summary judgment Baypack's claims based on an oral loan agreement, claims relating to two vessels, and its tortious interference claims. In December 1999, the Alaska Supreme Court held that the trial court abused its discretion when it dismissed Baypack's action on forum non conveniens grounds. Thus, the case was remanded to the Alaska trial court for further proceedings. Baypack, therefore, again moved to stay the proceedings in King County. Nelbro opposed the motion and asked the trial court to certify its prior partial judgments as final under CR 54(b) to prevent Baypack from relitigating those claims in Alaska.
The judge denied Baypack's motion for a stay and granted Nelbro's motion to certify the judgments already entered as final. Baypack moved for discretionary review of the order denying its motion for a stay and asked for accelerated review of its appeal of the decision certifying the partial judgments as final. A commissioner of this court held that Baypack had not met the standards for discretionary review, but he referred to a panel of judges the issue of whether the decision certifying the partial judgments as final was correct.
On the same day the commissioner entered his ruling, the Alaska trial court issued an injunction prohibiting Nelbro from prosecuting the action in Washington, except that it may defend itself in the appeal pending before this court. In granting the injunction, the Alaska court concluded that Baypack would suffer irreparable harm if the Washington action were allowed to proceed because it filed its case in Alaska first, and it would be denied its choice of a forum, despite the Alaska Supreme Court's ruling that the Alaska court was the proper forum. As a *25 result of the injunction, the King County court dismissed all the remaining unresolved claims and counterclaims asserted by the parties in Washington.[1]

Analysis
CR 54(b) makes an immediate appeal available in situations in which it could be unjust to delay entering a judgment on a distinctly separate claim until the entire case has been finally adjudicated.[2] The rule was copied from the federal rule and the two rules are essentially the same.[3] Thus, federal cases construing the rule are persuasive, though not binding.[4] CR 54(b) provides, in part, as follows:
When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination in the judgment, supported by written findings, that there is no just reason for delay and upon an express direction for the entry of judgment.[[5]]
Thus, four things are required for entry of a final judgment under CR 54(b). There must be: (1) more than one claim for relief or more than one party against whom relief is sought; (2) an express determination that there is no just reason for delay; (3) written findings supporting the determination that there is no just reason for delay; and (4) an express direction for entry of the judgment.[6] The fourth requirement is ministerial and has been met in this case, so this court must consider the other three.
There are two aspects to the appellate court's review in Rule 54(b) cases.[7] We must first be satisfied that the trial court properly reached a final decision as to any of the claims or parties. Some deference is given to the trial judge's opinion that the rule 54(b) requirements have been met,[8] but a trial court's certification that a decision meets the requirements of CR 54(b) is not conclusive.[9]
*26 According to Wright, Miller & Kane, "[t]here is no generally accepted test that is used to determine whether more than one claim for relief is before the court."[10] The United States Supreme Court has indicated that a claim need not be entirely distinct from all other claims in the action and arise from a different occurrence or transaction to be considered a separate claim for Rule 54(b) purposes.[11] But one commentator argues that courts of appeals continue to rely on a "transaction" or "pragmatic" theory, thus conserving appellate court effort by avoiding review of the same evidence in more than one appeal.[12]
Several courts have adopted a test enunciated by the Second Circuit to determine whether more than one claim for relief is before the court: "`The ultimate determination of multiplicity of claims must rest in every case on whether the underlying factual bases for recovery state a number of different claims which could have been separately enforced.'"[13] Thus, when the facts give rise to more than one legal right or cause of action, or there is more than one possible form of recovery and they are not mutually exclusive, the claimant has presented multiple claims for relief.[14]
Applying the Second Circuit's test, we agree with the trial court that Baypack presented multiple claims for relief, fulfilling the first requirement. For example, Baypack alleged that Nelbro breached an oral agreement to loan Baypack money to modify the P/V Red Sea. That claim could have been enforced separately from Baypack's breach of a written agreement and other remaining claims. Similarly, Baypack's claims that Nelbro schemed to destroy Baypack by initiating foreclosure proceedings on the P/V Stormy Seas and by acquiring the P/V Red Sea for itself after West One Bank initiated foreclosure proceedings could have been enforced separately from Baypack's other claims. The same is true of Baypack's tortious interference claim. Therefore, although all of Baypack's claims arose out of arguably related transactions or occurrences, the claims that were dismissed could have been enforced separately from the remaining claims.
Although we are satisfied that the trial court properly concluded that the claims were separable, we must now consider whether the trial court abused its discretion when it determined there was no just reason for delay.[15] A court abuses its discretion if the decision was manifestly unreasonable, or the discretion was exercised on untenable grounds or for untenable reasons.[16] Substantial deference is given to the trial court's judgment.[17]
Even if individual claims are in some sense separable from the remaining unresolved claims, not all final judgments should be immediately appealable.[18] The trial court should consider judicial administrative interests, as well as equity.[19] The factors relevant to the determination whether there is no just reason for delay include:
(1) [T]he relationship between the adjudicated and the unadjudicated claims, (2) *27 whether questions which would be reviewed on appeal are still before the trial court for determination in the unadjudicated portion of the case, (3) whether it is likely that the need for review may be mooted by future developments in the trial court, (4) whether an immediate appeal will delay the trial of the unadjudicated matters without gaining any offsetting advantage in terms of the simplification and facilitation of that trial, and (5) the practical effects of allowing an immediate appeal.[[20]]
Because a Rule 54(b) ruling may have potentially important res judicata ramifications, a trial court does not abuse its discretion by considering those ramifications in deciding whether or not to certify a judgment as final under CR 54(b).[21]
The trial judge explained his decision to certify the judgments as final as follows:
This court finds that the failure to make the above-mentioned orders final would cause Nelbro Packing Company to suffer the hardship and injustice of having to incur additional delay, and the substantial and unnecessary expenses of rebriefing and rearguing issues before another court that were already resolved in this Court. Moreover, the Court finds that certifying the above-mentioned orders as final would prevent a waste of judicial resources in litigating the claims in the Alaska Superior Court. Finally, the issues decided in those orders are distinct from the remaining unresolved issues raised by the parties.
Under the circumstances in this case, we conclude that the trial court abused its discretion. Although the judge's decision reflects that he considered some of the practical effects of immediate appeal, he did not address the other relevant factors, which appear to weigh against a conclusion that there was no just reason for delay. Without an explanation of why the other factors were disregarded, the court's stated reasons for the decision were untenable.
When adjudicated and pending claims are closely related and stem from essentially the same factual allegations, judicial economy generally is best served by delaying the appeal until all the issues can be considered by the appellate court in a unified package.[22] Although the claims the trial court dismissed could have been enforced separately from the remaining claims, all of Baypack's claims were closely related.
Nelbro agreed to assist Baypack in processing and marketing its fish and to provide Baypack with a $1.5 million line of credit. According to Baypack, despite Nelbro's agreement that WestOne Bank's line of credit was superior to its own security interest, Nelbro later told WestOne that it would not recognize the bank's interest in the fish. After that, WestOne informed Baypack it was not allowed to draw on its line of credit and the amount already owing was due immediately. Baypack was forced to secure additional financing from Nelbro.
Baypack alleged that by refusing to honor the priority of WestOne's security, Nelbro tortiously interfered with Baypack's relationship with WestOne Bank. Baypack also claimed that Nelbro's repudiating its obligation to accord priority to WestOne's security interest amounted to a breach of the contract and of its covenants of good faith and fair dealing.
According to Baypack, Nelbro also breached the contract by failing to provide the marketing assistance it had promised, so Baypack's 1995 season was not as profitable as it would have been if Nelbro had performed as required. Baypack alleged that Nelbro said it would make amends for its conduct in 1995 by agreeing to finance Baypack's operation in 1996. Baypack claimed that Nelbro agreed to pay for work needed to modify the P/V Red Sea, but after the repairs were begun and the vessel could not *28 be made seaworthy again without a considerable sum of money, Nelbro refused to advance the funds. According to Baypack, Nelbro refused to provide the money knowing that Baypack would miss the 1996 Alaska fishing season and would be destroyed without the funds to finish the work on the vessel.
Baypack's claim of "lender liability" was based, in part, on Nelbro's failure to honor its promise to finance Baypack's operations for the 1996 season. Baypack also claimed that Nelbro's reneging on its promise to finance the modifications to the P/V Red Sea breached the oral contract and was another way Nelbro breached its covenants of good faith and fair dealing.
According to Baypack, all of Nelbro's actions amounted to fraud. Baypack asserted that Nelbro intended to put Baypack out of business and, therefore, intentionally or negligently made false assertions, including its promises to provide marketing assistance and to pay for modifications to the P/V Red Sea, which Baypack relied upon to its detriment. Thus, the claims dismissed on summary judgment and the unadjudicated claims are closely intertwined. It would appear, therefore, that judicial economy would best be served by delaying the appeal.
The next factor to consider is whether questions that would be reviewed on appeal are still before the trial court for determination in the unadjudicated portion of the case. The issues to be reviewed on appeal are whether the trial court properly granted summary judgment to Nelbro on the oral contract, tortious interference, and claims regarding the vessels. If this court rules in favor of Nelbro, those issues, because of the doctrine of res judicata, would not still be before the trial court for determination. However, much of the evidence that will be presented on the remaining claims will be the same. Therefore, even though the questions to be reviewed on appeal are not still before the trial court, this factor does not weigh strongly in favor of an immediate appeal.
Another factor to consider to determine whether there was no just reason for delay in entering a final judgment is whether the need for review is likely to be mooted by future developments in the trial court. In general, an appeal should be deferred if there is a possibility that developments in the litigation may moot a claim.[23]
Baypack has indicated there will be no need for it to appeal from the summary judgments certified as final if it is fully compensated for its damages under its remaining claims. Although we are not in a position to comment on whether Baypack is likely to prevail on its remaining claims, we agree it is unlikely Baypack would carry through with an appeal of the summary judgment orders if it is otherwise able to avoid its liability under the loans. This factor, therefore, weighs against a determination that there is no just reason for delay of an appeal.
The fourth factor to consider is whether an immediate appeal will delay the trial of the unadjudicated matters without gaining any offsetting advantage in terms of the simplification and facilitation of that trial. Certifying the summary judgment orders as final probably will not delay the trial on the remaining claims and may simplify the trial that will continue in Alaska by reducing the issues the court must resolve. On the other hand, Baypack asserts, and Nelbro does not directly dispute, that the issues decided on summary judgment have already been fully briefed in the Alaska forum and need only to be decided by that court.[24] Moreover, the CR 54(b) certifications may, in essence, complicate the proceedings and waste judicial resources by encouraging an appeal of the summary judgment orders that will not be necessary if Baypack prevails on its other claims. Thus, the fourth factor does not weigh strongly in favor of an immediate appeal.
The court must also consider the practical effects of allowing an immediate appeal. The most obvious practical effect is that the certifications reduce the number of issues the *29 Alaska court will have to resolve. Assuming that Nelbro prevails on appeal, allowing it an immediate appeal will allow it to recover under its judgment more quickly. But Nelbro does not contend, and did not contend below, that it will suffer greatly by having to wait to execute on its judgment. Moreover, as will be discussed more fully below, allowing an immediate appeal on some issues in Washington while the remainder of the case proceeds in Alaska may unnecessarily complicate the entire case. Thus, it is not clear that the practical effects of an immediate appeal weigh in favor of CR 54(b) certification.
Nelbro relies upon Texaco, Inc. v. Ponsoldt in support of its position that the trial court's certification of the summary judgment orders as final was correct. The Ninth Circuit held in Texaco that even though the resolved claims and the remaining claims required proof of the same facts, Rule 54(b) certification was proper because granting immediate appeal of the judgments would streamline the ensuing litigation.[25]
The Texaco case involved a dispute over an unconsummated land sale. Ponsoldt agreed to purchase ranch land from Texaco. The purchase and sale agreement contained a liquidated damages provision that retention of Ponsoldt's $200,000 deposit would be Texaco's sole remedy if Ponsoldt defaulted before the close of escrow.
Ponsoldt refused to close the sale and filed suit in state court for specific performance, breach of contract, and fraud. The following day, Texaco filed suit in federal district court, asking for specific performance and declaratory relief. The state court stayed its action, so Ponsoldt filed counterclaims against Texaco in the federal court for breach of contract, specific performance, bad faith denial of the existence of a contract, breach of the covenant of good faith and fair dealing, fraud, and negligent misrepresentation.
Texaco and Ponsoldt attempted to resolve their dispute. Texaco later filed a second action against Ponsoldt, asserting breach of the settlement agreement, fraud, and negligent misrepresentation. Ponsoldt counterclaimed for breach of contract, specific performance, fraud, and negligent misrepresentation.
Ponsoldt moved for summary judgment, raising the liquidated damages provision as a complete defense to the claim for specific performance in the first action. The motion was granted, and Texaco did not appeal that ruling. Later, Ponsoldt moved for summary judgment on the declaratory relief claim, arguing the claim was moot because the relief requested was the same as the relief requested in the specific performance claim. Ponsoldt also moved for summary judgment on all claims in the second action, asserting that the statute of frauds made the settlement agreement unenforceable and barred the fraud claims. The court granted the summary judgment motions and certified those decisions as final under Fed.R.Civ.P. 54(b). Ponsoldt's counterclaims remained.
Texaco argued that the trial court erred in certifying the decisions as final because Ponsoldt's remaining counterclaims involved the same factual determinations as the dismissed claims. But the appellate court held that the judgments were properly certified for appeal because the decisions separated the legal from the factual questions and streamlined the litigation.[26]
In this case, however, it is not clear that certifying the summary judgment orders for appeal will streamline the litigation. As the trial court was aware when it certified the judgments as final, the Alaska Supreme Court had remanded the case to the Alaska trial court. Therefore, the trial court should have been aware that by certifying the judgments as final, an appeal would be taken in Washington while the case proceeded in Alaska. If the Alaska case proceeds with that court giving res judicata effect to the King County judgments, and a Washington appellate court later reverses the summary judgment orders, the dismissed claims might need to be reheard after the Alaska case has concluded. Thus, while it generally may be true that resolving discrete legal issues will streamline litigation, the Washington court should have considered whether the litigation would truly be streamlined under these circumstances.
*30 The written findings do not reflect whether the trial judge considered how certifying the judgments as final might complicate the case. The trial court's CR 54(b) order also does not indicate whether the court considered if the need for review might be mooted by future developments in the trial court.
The court referred to the unnecessary time and expense of rebriefing and rearguing issues, but at least some of the issues apparently were already briefed and argued in the Alaska court. Therefore, although the judgment indicated that certifying the judgments as final would save Nelbro the "substantial and unnecessary expenses of rebriefing and rearguing issues before another court that were already resolved in this Court," the conclusion that judicial economy would be served by an immediate appeal is not clear.
The court also said that failing to make the orders final would cause Nelbro "to suffer the hardship and injustice of having to incur additional delay," but did not say why, or explain how the injustice to Nelbro outweighed the injustice to Baypack of being deprived of having the issues decided by its chosen forum.[27] The mere statement that Nelbro will suffer hardship and injustice is inadequate to support the decision.[28]
Written findings are important because [e]xplanation produces intellectual discipline; a judge who sets down in writing (or articulates in court) the reasons pro and con, and his method of reaching a decision, must work through the factors before deciding, and we then may be sure that the conclusion is based on appropriate considerations even if not necessarily one we would have reached ourselves.[[29]]
As the United States Supreme Court said in a decision in which the findings were inadequate to support the judgment,
"[i]t is essential ... that a reviewing court have some basis for distinguishing between well-reasoned conclusions arrived at after a comprehensive consideration of all relevant factors, and mere boilerplate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law."[[30]]
To summarize, without consideration of all the relevant factors, the reasons the court gave for granting CR 54(b) certification do not support the decision and were untenable. Thus, the judgments are not appealable.
We reverse the CR 54(b) certifications and dismiss the appeal.
NOTES
[1] Baypack objected to the dismissal of its claims against Nelbro and has filed a notice of appeal from the order of dismissal, presumably out of fear that the summary judgment orders would then be considered final whether or not they were properly certified as final under CR 54(b).
[2] Doerflinger v. New York Life Ins. Co., 88 Wash.2d 878, 567 P.2d 230 (1977); 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 3d § 2654 (1998).
[3] Schiffman v. Hanson Excavating Co., 82 Wash.2d 681, 684, 513 P.2d 29 (1973).
[4] See Fox v. Sunmaster Products, Inc., 115 Wash.2d 498, 503, 798 P.2d 808 (1990); Doerflinger, 88 Wash.2d at 880, 567 P.2d 230.
[5] The relevant part of Fed.R.Civ.P. 54(b) is as follows:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.
The substance of RAP 2.2(d) also is virtually identical to CR 54(b). RAP 2.2(d) states, in part:
In any case with multiple parties or multiple claims for relief, or in a criminal case with multiple counts, an appeal may be taken from a final judgment which does not dispose of all the claims or counts as to all the parties, but only after an express direction by the trial court for entry of judgment and an express determination in the judgment, supported by written findings, that there is no just reason for delay.
[6] Pepper v. King County, 61 Wash.App. 339, 345, 810 P.2d 527 (1991).
[7] Curtiss-Wright Corp. v. General Electric Co., 446 U.S. 1, 10, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980); Schiffman, 82 Wash.2d at 687, 513 P.2d 29.
[8] 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, § 2655, at 42.
[9] Curtiss-Wright Corp., 446 U.S. at 10, 100 S.Ct. 1460; 10 Wright et al., § 2655, at 39-40 ("Since the court has no discretion to authorize an appeal when Rule 54(b) does not apply, its decision that the requirements of the rule have been met is fully reviewable by an appellate court"); Fox, 115 Wash.2d at 503, 798 P.2d 808. Wright, Miller & Kane explains that difficulties arise in analyzing Rule 54(b) cases when a court believes it may dismiss an appeal only for an abuse of discretion, when what is truly in question is the propriety of trial court's direction that a final judgment be entered. 10 Wright et al., § 2655, at 42.
[10] 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, § 2657, at 68.
[11] See Cold Metal Process Co. v. United Engineering & Foundry Co., 351 U.S. 445, 451-52, 76 S.Ct. 904, 100 L.Ed. 1311 (1956).
[12] See 10 Wright et al., § 2657, at 69 n.10, referring to a note in the Harvard Law Review (Note, Appealability in the Federal Courts, 1961, 73 Harv.L.Rev. 351, 360).
[13] 10 Wright et al., § 2657, at 73, quoting Rieser v. Baltimore & Ohio R.R. Co., 224 F.2d 198, 199, cert. denied, 350 U.S. 1006, 76 S.Ct. 651, 100 L.Ed. 868 (1956).
[14] 10 Wright et al., § 2657, at 76-77.
[15] See Curtiss-Wright Corp., 446 U.S. at 10, 100 S.Ct. 1460; 10 Wright et al., § 2655, at 42-43.
[16] Brand v. Department of Labor and Industries, 139 Wash.2d 659, 665, 989 P.2d 1111 (1999).
[17] Curtiss-Wright, 446 U.S. at 10, 100 S.Ct. 1460; 10 Wright et al., § 2655, at 42-43.
[18] Curtiss-Wright, 446 U.S. at 8, 100 S.Ct. 1460; Horn v. Transcon Lines, Inc., 898 F.2d 589, 592 (7th Cir.1990).
[19] Curtiss-Wright, 446 U.S. at 8, 100 S.Ct. 1460.
[20] Schiffman, 82 Wash.2d at 687, 513 P.2d 29.
[21] Continental Airlines, Inc. v. Goodyear Tire & Rubber Co., 819 F.2d 1519, 1525 (9th Cir.1987); Shamley v. ITT Corp., 869 F.2d 167, 170 (2d Cir.1989).
[22] Solomon v. Aetna Life Insurance Co., 782 F.2d 58, 60 (6th Cir.1986).
[23] Horn, 898 F.2d at 592.
[24] Nelbro argues that if the summary judgment orders are not appealable, in addition to relitigating those issues, the parties will also have to argue whether Baypack should be allowed to amend its complaint to include claims based on the foreclosures of the P/V Red Sea and P/V Stormy Sea. If those claims are not part of the Alaska case, the issues relating to them presumably have not been briefed or argued.
[25] Texaco, Inc. v. Ponsoldt, 939 F.2d 794, 798, (9th Cir.1991).
[26] Texaco, 939 F.2d at 798.
[27] The decision dismissing the oral contract claims was based on Washington law. Baypack asserted in the trial court that the Alaska court should be allowed to determine whether Alaska or Washington law applied.
[28] Pepper, 61 Wash.App. at 350, 810 P.2d 527 ("the record must affirmatively show there is in fact some danger of hardship or injustice that will be alleviated by an immediate appeal").
[29] Horn, 898 F.2d at 592. In this case, the trial court's oral decision is no more complete than the written decision.
[30] Solomon, 782 F.2d at 60, quoting Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 434, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968). The Anderson case did not involve Rule 54(b), but the Solomon case did.