[No. 29530-3-III.   Division Three.   September 13, 2011.]

GENE H. TOM ET AL., *Appellants*, v. THE STATE OF WASHINGTON, *Respondent*.

*Michael Edward de Grasse*, for appellants.

*Robert M. McKenna, Attorney General,* and *Andrea Vingo, Assistant*, for respondents.

¶1 SWEENEY, J. — This appeal follows the summary dismissal of a claim for damages based on inverse condemnation. The landowners' property was rezoned from agricultural to residential in 2004. But, for decades before the rezone, the neighboring state penitentiary had operated a firing range. And it continued to operate the range after the rezone. The noise from that range rendered the landowners'

property unusable as residential property. We, nevertheless, conclude this is not a governmental taking that will support a claim for "inverse condemnation." And we affirm the trial court's dismissal of the suit.

## FACTS

¶2 The Washington State Penitentiary in Walla Walla opened in 1886 and has operated a firing range on its grounds ever since. "The firing range is used almost on a daily basis." Clerk's Papers (CP) at 42. And the noise from the firing range is loud.

¶3 Gene and Barbara Tom own four parcels of property next to the penitentiary. They bought the parcels between 1962 and 1984. The Toms have used their property for agricultural purposes for decades.

¶4 The Toms' property was rezoned in 2004 to allow residential development. Mr. Tom requested that the State stop the penitentiary's firing range activities. The State refused. The Toms then sued the State for inverse condemnation in 2009 and claimed that the State's continued use of its firing range destroyed their right to use their property for residential development:

> As a consequence of its refusal to discontinue operations of its firing range in 2004, the [State] has taken the [Toms'] property. Specifically, the operation of the firing range by the [State] from and after 2004 has generated loud noises or other sonic disturbances of such magnitude and frequency that the use and quiet enjoyment of the [Toms'] property for residential purposes has been completely destroyed.

CP at 4 (Compl. for Damages).

¶5 Mr. Tom stated in a declaration that the State's activities on the firing range cause noise pollution and that the noise has increased in frequency and intensity in the previous decade. Attached to Mr. Tom's declaration is a log that documents the points in time between August 25 and September 19, 2008, when the firing range generated noise:

Washington State Penitentiary - Firing Range Usage Log

CP at 32. According to Mr. Tom, this log represents the frequency of the noise pollution affecting his property from June 2004 to the present. J. Jeffrey Burnett, a noise expert, measured the firing range's impulse sound levels from the Toms' property in June 2009. He recorded six sounds of short duration, which ranged from 65 dB(A)[1] to 91 dB(A). According to Mr. Burnett, the "noise generated by the firing range operated by the Department of Corrections renders the Tom[s'] property unmarketable for residential development." CP at 21-22. Mr. Tom estimated that the noise pollution reduced the market value of his property by $3.7

---

[1] "'dB' means the sound level measured in decibels, using the 'A' weighting network." WALLA WALLA COUNTY CODE 9.20.010(B).

million—the difference between the property's value for residential use but for the State's activities ($4.4 million) and its value in June 2004 for agricultural use ($740,000).

¶6 The Toms moved for "an order determining that noise pollution caused by the defendant's firing range constituted a taking of their property on June 30, 2004." CP at 17. The State moved for summary judgment. The trial court denied the Toms' motion, granted the State's motion, and dismissed the Toms' suit. The Toms appealed.

## DISCUSSION

¶7 We review de novo an order granting summary judgment. *Fitzpatrick v. Okanogan County*, 169 Wn.2d 598, 605, 238 P.3d 1129 (2010). We consider the evidence and the inferences from that evidence in the light most favorable to the Toms. *Id.* But we will affirm the summary judgment order if the Toms raise no genuine issue of material fact and the State is entitled to judgment as a matter of law. *Id.*

¶8 We note at the outset that our research has turned up no case where a party has claimed that a preexisting governmental use of a neighboring property gives rise to a compensable taking because of an unrelated zoning change to the subject property.

¶9 Inverse condemnation is a property owner's cause of action against the government for the recovery of a loss of value to the owner's property, which the government caused but did not pay for. *Id.* at 605-06. "The theory of inverse condemnation was created by the courts to provide a remedy for a property owner whose property has been appropriated by the government and the government has been recalcitrant in its duty to initiate formal condemnation proceedings." *Pepper v. King County*, 61 Wn. App. 339,

347 n.6, 810 P.2d 527 (1991). "Because the government could not be sued in tort, inverse condemnation was developed to provide a remedy where none previously existed." *Id.*

¶10 Generally, to prevail on an inverse condemnation claim, the Toms must show (1) a taking (2) of private property (3) for public use (4) without just compensation (5) by a governmental entity without a formal eminent domain proceeding. *Fitzpatrick*, 169 Wn.2d at 605-06. A taking occurs when the government invades or interferes with the use and enjoyment of a person's property, causing the property to lose value. *Pruitt v. Douglas County*, 116 Wn. App. 547, 559, 66 P.3d 1111 (2003). The Toms cannot make this showing because the noise from the penitentiary's firing range has interfered with the Toms' property long before the Toms bought it. As subsequent purchasers, then, they may not sue for the original taking caused by the noise at the firing range. *Hoover v. Pierce County*, 79 Wn. App. 427, 433-34, 903 P.2d 464 (1995). The price the Toms paid for the property reflected the property value (diminished value) with the neighboring noise. *See id.* at 434.

¶11 The Toms can, however, recover for a new taking if they can show that additional noise from the firing range caused a decline in the market value of their property after they purchased it. *Id.* Additional governmental action includes an increase in the intensity of the original interference over time. *Id.* at 435 (citing *Highline Sch. Dist. No. 401 v. Port of Seattle*, 87 Wn.2d 6, 15, 548 P.2d 1085 (1976) (where number of flights more than doubled and noisier jets replaced propeller aircraft)). And the Toms claim that the noise from the penitentiary's firing range has increased in intensity between 1999 and 2009 and reduced the value of their property in 2004, long after they purchased the property.

¶12 The record before us, however, contains no evidence of additional governmental activity. The firing range is used almost daily and currently generates sound levels

that range from 68 dB(A) to 91 dB(A). But there is no evidence of past usage or sound levels with which to compare the current data and conclude that the noise has increased in intensity. Only a statement from Mr. Tom suggests that the noise from the firing range is louder than before and that the firing range is used more frequently now than in the past. Those conclusory statements are not enough to defeat a motion for summary judgment. *Sanders v. Woods*, 121 Wn. App. 593, 600, 89 P.3d 312 (2004).

¶13 Moreover, the noise from the penitentiary's firing range did not reduce the value of the Toms' property in 2004 because the noise has not changed. Only the potential use of the Toms' property has changed. Indeed, the Toms did not claim inverse condemnation until the zoning change. The zoning change, a change the State penitentiary had nothing to do with, created a differential in the actual and potential values of the Toms' property. The zoning change might well have increased the value of the Toms' property but for the preexisting, long preexisting, noise next door. The Toms simply did not realize that increase in value. The noise may be a nuisance—a preexisting nuisance—but it is not a taking because it did not *reduce* the value of the Toms' property. We, therefore, conclude there was no new condemnation here, inverse or otherwise.

¶14 It would be a curious rule to allow one government's regulatory action (a zoning change) to give rise to a new takings claim for another government's physical activity (firing range noise) that predates the zoning change by almost a century. It is a rule we are not willing to create.

¶15 Our conclusion here accords with Division Two's decision in *Hoover*, 79 Wn. App. 427. There, landowners sued Pierce County for property damage caused by water that a county road and culvert channeled to the property. *Id.* at 430. The county contended that the landowners could not sue for inverse condemnation because they bought the property after the county constructed the road and the culvert. *Id.* The landowners, however, maintained that a

new taking occurred each time water flooded their land. *Id.* Division Two concluded that a new takings cause of action requires additional government action and that a flood, absent additional governmental action, does not support such an action. *Id.* at 435-36. Similarly, the Toms' claim fails because, like a flood, a rezone by the local government alone does not give rise to a cause of action for a new physical taking by a state governmental entity.

¶16 In sum, any taking because of noise occurred before the Toms purchased the affected property. The noise apparently became a problem after the property was rezoned. But the potential use of the Toms' property was the only thing that changed. The noise did not. The noise from the penitentiary's firing range might be a preexisting nuisance, but it is not a taking. The trial court, then, properly dismissed the Toms' inverse condemnation claim.

¶17 We affirm.

BROWN and SIDDOWAY, JJ., concur.

Reconsideration denied November 8, 2011.

Review denied at 173 Wn.2d 1025 (2012).