[No. 39232-8-I. Division One. March 24, 1997.]
THE STATE OF WASHINGTON, *Appellant*, v. JASON PAUL HINDS, *Respondent*.

---

[14]RCW 2.06.040.

476

*James H. Krider, Prosecuting Attorney,* and *Seth Aaron Fine, Deputy,* for appellant.

*Elaine L. Winters* and *Darby DuComb* of *Washington Appellate Project,* for respondent.

KENNEDY, A.C.J. — Forty-four-year-old Patricia Baggs died in a one-car accident as a result of eighteen-year-old Jason Paul Hinds's reckless driving. Hinds had been drinking whiskey given to him by Baggs, and was driving Baggs's car with her permission. He pleaded guilty to vehicular homicide and received an exceptional sentence downward. The court concluded that Baggs was a willing participant in the offense to a significant degree because she provided alcohol to Hinds and then allowed him to drive her car. We agree with the State that there must be

a causal connection between Baggs's conduct of furnishing the liquor and allowing Hinds to drive her car and Hinds's recklessness, in order to support a conclusion that she was a willing participant in the crime to a significant degree. We also agree that the court did not explicitly find the causal connection. Nevertheless, because support for such a connection exists in legislative policy, analogous case law, and, as conceded by the State during oral argument for this appeal, in the record, and because the trial court may have omitted an explicit finding based on a misunderstanding of the State's position with respect to that issue, we remand for clarification of the findings. If the court finds a causal connection between Baggs's conduct and Hinds's reckless driving, i.e., finds that both Baggs and Hinds participated in conduct that caused the vehicular homicide to occur, we affirm the exceptional sentence; if it does not, we reverse and require imposition of a standard range sentence.

## FACTS

On the night of the accident, Hinds, his 15-year-old sister Becky and several other teenagers gathered at Baggs's home, where they drank liquor that Baggs provided and consumed with them. Baggs drove Hinds to her home. Hinds later said that he had often consumed alcohol at Baggs's home and that he had been drinking since he was 16 years old. Becky left the party after a fight with her boyfriend. When she did not return, Hinds asked Baggs if she would help him look for her. Hinds and Baggs (Hinds was driving) drove around in Baggs's car for awhile, then returned to her home to see if Becky had returned. Baggs went inside the house, came back to the car and said, "Let's go." Clerk's Papers at 47. Hinds later learned that Becky was at Baggs's home when Baggs went back inside, but said that Baggs did not tell him that Becky was there.

Hinds drove on a two-lane country road with a posted speed limit of 35 mph. He failed to stop at a stop sign

while traveling at an estimated speed of 100 mph, and lost control of the car. The car became airborne and eventually came to rest on its top, after striking a parked car and several trees. Baggs, who was not wearing a seat belt, was ejected from the vehicle. Her head struck a tree and she landed about 30 feet from the point of collision. Hinds, who wore a seat belt, suffered only minor injuries.

Several people heard the collision and came to assist. One person detected a slight odor of intoxicants coming from the car. Another heard Hinds talking and thought that he sounded like he was drunk. Hinds admitted to investigating officers that he had been drinking whiskey for 1 to 3 hours before driving. A sample of Hinds's blood taken nearly 2 hours after the accident revealed a blood alcohol level of .05.

The State charged Hinds with vehicular homicide, in violation of RCW 46.61.520(1)(b), for unlawfully operating a motor vehicle in a reckless manner and causing the death of Patricia Baggs. Hinds pleaded guilty. In his plea statement, Hinds said that he drove Baggs's car "at her request." Clerk's Papers at 84. He faced a standard range sentence of 21 to 27 months.

Hinds told the author of the presentence report that the combination of worrying about Becky, " 'a few shots' " of whiskey and the earlier consumption of several allergy pills contributed to his " 'not totally coherent' " state of mind before the accident. Clerk's Papers at 47. He said that he thought he was traveling at the speed limit at the time of the crash.

Hinds's criminal history consisted of three traffic citations, two of which involved excessive speeding. In May 1994, he was cited for traveling 33 mph above the posted speed limit; in February 1996, he was cited for driving 31 mph above the posted limit. He paid fines for each ticket.

Baggs's husband Kenneth testified that Hinds was a good friend of the family. He said that an exceptional sentence below the standard range was appropriate and that there was no need to send Hinds to prison where he

would become a "hardened, heartless person." Report of Proceedings at 14.

Baggs's daughter Cynthia concurred. She said that a prison term was not necessary because Hinds would not re-offend. She also said that a police officer had told her that Hinds told him that her mother "put the keys in his hand, and he told me he didn't even want to drive that night at all, but she forced the keys in [his] hand. And knowing my mom, she had a temper. She was probably yelling at him. I don't know." Report of Proceedings at 16.

Baggs's sister Carol Andrews wrote that she was angry with Kenneth Baggs for failing to intervene in the "madness that was going on in my sister's life with all the drinking and teenagers etc." Clerk's Papers at 29. She also wrote: "Jason was 18 I believe, and drunk from liquor supplied by my sister. I believe she coaxed him into drinking and driving fast. She often told me about driving fast in her 'fast car.' " Clerk's Papers at 30. Andrews suggested that, instead of a jail sentence, Hinds be ordered to spend time working with victims of drunk drivers and their families.

The Department of Corrections recommended an exceptional sentence downward of 90 days in jail, followed by a 36-month term of community supervision. According to the author of the presentence report:

> This is not a typical case of vehicular homicide. Although Hinds was acting in a reckless manner in causing the death of Patricia Baggs, she also acted recklessly and to a significant degree contributed to her own death. Ms. Baggs provided alcohol to several minors, including Hinds, in the hours before her death. She violated the law in doing so. Ms. Baggs directed Hinds to drive her vehicle. She chose not to use the vehicle's passenger side seatbelt, which resulted in her being ejected from the vehicle at the point of the collision.

Clerk's Papers at 49.

Hinds requested an exceptional sentence of 90 days of incarceration. He contended that the following mitigating factor applied: "To a significant degree, the victim was an

initiator, willing participant, aggressor or provoker of the incident." RCW 9.94A.390(1)(a). Hinds argued that Baggs contributed to the offense because she provided him alcohol, permitted him to drive her car, failed to wear a seat belt and did not tell Hinds that Becky was in Baggs's home when they returned there after looking for her.

The State recommended a standard range sentence of 21 months. Pointing to Hinds's blood-alcohol level of .05 less than two hours after the accident, the State asserted that, although Hinds's alcohol consumption may have contributed to his recklessness, it was not by itself the basis for his conviction. According to the State, the fact that Hinds received alcohol from Baggs did not establish that she was, to a significant degree, a willing participant in Hinds's reckless conduct.

The State also argued that Baggs's furnishing of her car to Hinds did not support the conclusion that she was a willing participant. The State contended that driving the car 65 mph above the speed limit — not simply driving the car — caused the accident. The State noted that Hinds's prior criminal history, which included two tickets for high-speed driving, suggested that Hinds "did not need much if any encouragement to drive in excess of the speed limit." Clerk's Papers at 61.

In its oral ruling, the court wondered why a 44-year-old woman would supply alcohol to an 18-year-old, or would entrust her vehicle to him after providing him with alcoholic beverage. The court placed great weight on Carol Andrews's statement as well as the recommendations of Kenneth and Cynthia Baggs. As to Ms. Andrews's statement, the court observed:

So I'm declaring an exceptional sentence on the express ground as a willing participant. I tend to think that based upon the letter that I received from one of Ms. Baggs' surviving sisters, 'That Jason was 18, I believe drunk from liquor supplied by my sister. I believe she coaxed him into drinking and driving fast. She often told me about driving fast in her fast car.' I don't know if she coaxed him into driving fast, but she might have.

Report of Proceedings at 26-27. The court imposed a 12-month county jail term and 12 months of community supervision.

The State's timely appeal followed.

## DECISION

■ ■ The State does not challenge the trial court's factual findings; rather, it contends that the findings do not support reliance on the "willing participant" mitigating factor. This contention requires us to determine whether the factual findings constitute a "substantial and compelling" reason for departing from the standard range as a matter of law.[1] To meet this test, the facts must significantly distinguish the offense from other incidents of the same crime.[2] The "willing participant" factor is applicable where both the defendant and the victim engaged in the conduct that caused the offense to occur. DAVID BOERNER, SENTENCING IN WASHINGTON § 9.12, at 9-21 (1985). "The most frequent example of this is likely to be in cases of vehicular homicide when both the victim-passenger and the defendant-driver were drinking together before the fatal accident occurred . . . ." *Id.* (footnote omitted).

■ The State first argues that Baggs's furnishing of liquor to Hinds "had nothing to do with the crime" because Hinds was convicted of the reckless driving means of committing vehicular homicide rather than the driving while intoxicated means. We disagree. Alcohol consumption is relevant even though Hinds pleaded guilty to the reckless driving means of committing vehicular homicide. Indeed, in *Bates v. Tirk*,[3] the Court held that evidence of a driver's intoxication is admissible as bearing on the question of negligence:

A person under the influence of intoxicating liquor is unfit

---

[1]*State v. Alexander,* 125 Wn.2d 717, 723, 888 P.2d 1169 (1995); RCW 9.94A.210(4)(a).

[2]*State v. Chadderton,* 119 Wn.2d 390, 399, 832 P.2d 481 (1992).

[3]177 Wash. 286, 31 P.2d 525 (1934).

to operate an automobile, not only because of the excessive speed that he may attain or the devious course that he may follow, but also because his brain may not properly function in coordination with his hands or his feet, even under the ordinary circumstances attendant upon the progress of traffic.

177 Wash. at 290. Evidence of a driver's use of intoxicants is also relevant to determine what effect, if any, the driver's drinking had on his allegedly reckless driving.[4]

■■ The State also argues that merely supplying a car and alcohol did not make Baggs a willing participant; rather, the court was also required to find a connection between Baggs's conduct and Hinds's reckless driving, i.e., to find that Hinds's judgment was impaired by reason of intoxication and that Baggs was aware of any such impairment. We agree that there must be a link between Baggs's conduct and Hinds's recklessness, and that the court did not explicitly make the connection. Nevertheless, we find support for this "missing" causal connection in the Legislature's treatment of underage drinking, in analogous tort and accomplice liability theories, and in the facts of the case.

First, our Legislature has recognized the volatile combination of liquor and youth. As an 18-year-old, Hinds was prohibited from consuming alcoholic beverages and Baggs committed a crime by furnishing liquor to him.[5] This prohibition "protects a minor's health and safety interest from the minor's own inability to drink responsi-

---

[4]*See, e.g., State v. Amurri,* 51 Wn. App. 262, 265-66, 753 P.2d 540 (1988) (reckless driving); *State v. Giedd,* 43 Wn. App. 787, 790-91, 719 P.2d 946 (1986) (negligent homicide); *State v. Birch,* 183 Wash. 670, 674, 49 P.2d 921 (1935) ("In view of the known effect of alcohol, it is for the jury to say whether or not its use by the accused . . . rendered him incapable of driving, in accordance with the standard fixed in the statute.").

[5]RCW 66.44.270(1), subject to exceptions not applicable here, prohibits any person to furnish liquor to a minor.

bly."[6] The Legislature has also addressed the often-disastrous combination of underage drinking and driving by setting the impairment level for underage drivers at a blood alcohol level of .02.[7] Finally, although the Dramshop Act was repealed in 1955, the common law exception for injuries sustained or caused by a minor who is provided with liquor is still valid.[8]

Second, we find cases examining the tort liability of a social host to be analogous to the "willing participant" mitigating factor. In tort cases, negligence is established where the defendant's breach of a duty of care proximately causes injury.[9] Proximate cause has two requisite elements, cause in fact (but-for causation) and legal causation (whether liability should attach as a matter of logic, common sense, justice and policy).[10] Furnishing liquor to a minor constitutes a breach of a social host's duty of care, which the trier of fact may consider as evidence of negligence.[11] Where a minor shows that the providing of alcohol proximately caused resulting injuries, he may maintain a cause of action.[12]

In this case, the "missing" finding of a causal connection, i.e., a finding that conduct on the part of both the victim and the defendant caused the offense to occur, is analogous to proximate cause; if Baggs's conduct was a but-for and legal cause of Hinds's reckless driving, she

---

[6]*Hansen v. Friend,* 118 Wn.2d 476, 481, 824 P.2d 483 (1992); *see also Estate of Kelly v. Falin,* 127 Wn.2d 31, 39-40, 896 P.2d 1245 (1995) (unlike a youth "whose sense of immortality leads to reckless abandon," responsibility for self-inflicted injury borne by intoxicated adult); *Young v. Caravan Corp.,* 99 Wn.2d 655, 660, 663 P.2d 834, 672 P.2d 1267 (1983) (Legislature has determined that minors "neither physically nor mentally equipped to handle the consumption of intoxicating liquor").

[7]RCW 46.61.503.

[8]*Rinks v. Bearss,* 83 Wn. App. 334, 337, 921 P.2d 558 (1996).

[9]*Hansen,* 118 Wn.2d at 479.

[10]*Baughn v. Honda Motor Co.,* Ltd., 107 Wn.2d 127, 142, 727 P.2d 655 (1986); *Hartley v. State,* 103 Wn.2d 768, 778-79, 698 P.2d 77 (1985).

[11]*Hansen,* 118 Wn.2d at 482-83.

[12]*Hansen,* 118 Wn.2d at 485.

significantly participated in the offense. Baggs drove Hinds to her house in her car earlier in the evening; a rational trier of fact could find that, but for Baggs permitting Hinds to drive her car, Hinds would not have been driving. In addition, a rational trier of fact could find that had Baggs not provided liquor to Hinds at the party, Hinds would not have been impaired. Hinds indicated that he drove at Baggs's request. Carol Andrews believed that Baggs "coaxed [Hinds] into drinking and driving fast" in view of the "madness that was going on in my sister's life with all the drinking and teenagers, etc." and because Baggs had often spoken of "driving fast in her 'fast car.'" Without impairment and a car, there would have been no accident. Applying logic, common sense, justice and policy leads to the conclusion that Baggs should be held responsible for her actions and their legal consequences. In this case, those consequences are not civil liability, but to the extent that the trial court makes an explicit finding that Baggs's conduct, together with that of Hinds, caused the offense to occur, those consequences may include the conclusion that Baggs willingly participated, to a significant degree, in Hinds's commission of vehicular homicide.

We also find instructive cases addressing accomplice liability. Accomplice liability is premised on the accomplice's general knowledge that she is assisting the principal to commit a crime, not upon specific knowledge of the elements of the principal's crime.[13] An accomplice to an offense runs the risk that the principal will exceed the scope of a prearranged crime.[14] A rational trier of fact could determine that, by providing Hinds with liquor and a car, Baggs assisted him in violating the law.[15] That Hinds exceeded the scope of the crimes that Baggs helped him to

---

[13]*State v. Ferreira*, 69 Wn. App. 465, 471-72, 850 P.2d 541 (1993).

[14]*State v. Davis*, 101 Wn.2d 654, 658, 682 P.2d 883 (1984).

[15]It is unlawful for anyone under the age of 21 to possess, consume or acquire liquor. RCW 66.44.270(2)(a). It is also illegal for a minor to operate a motor vehicle after consuming alcohol if, within two hours of operation, he has a BAC level of .02 or higher. RCW 46.61.503.

commit does not absolve her of responsibility for the ultimate acts committed.[16]

The facts in *State v. Hopkins*, 147 Wash. 198, 265 P. 481, *cert. denied*, 278 U.S. 617 (1928) are remarkably similar to those in the instant matter. Hopkins, the passenger, agreed to allow John Doe to drive her car. Doe drove recklessly and caused an accident that resulted in the death of another motorist. A witness opined that Doe was intoxicated, based on the strong odor of liquor on Doe's breath, his leaning on Hopkins's car, and his disappearing from the scene. Hopkins was charged with and convicted of manslaughter for aiding and abetting Doe by entrusting her car to him knowing that he was intoxicated. She appealed, challenging the sufficiency of the evidence. The court upheld the conviction, finding that the evidence supported a conclusion that Doe was unfit to drive, that he was intoxicated during the course of the trip, and that his condition was, or should have been, known to Hopkins had she exercised due care. *Hopkins*, 147 Wash. at 203-04.

Accordingly, had the facts here been identical but for Hinds killing another motorist instead of his passenger, Baggs's conduct may have been sufficient to convict her of vehicular homicide as an accomplice. Where the conduct at issue rises to the level of accomplice liability, there may be "willing participation" to a significant degree under the Sentencing Reform Act.

 We agree with the State that the court's findings must support its conclusion, and that it is not this Court's function to supply "missing" findings — even when the record would support the findings without taking additional evidence. Under the circumstances of this case, we find it appropriate to remand for clarification of the

---

[16]*See, e.g., State v. Langford*, 67 Wn. App. 572, 580, 837 P.2d 1037 (1992) (accomplice can be found guilty of second degree felony murder based on assault even though he did not know means by which principal intended to accomplish the assault), *review denied*, 121 Wn.2d 1007 (1993).

findings.[17] First, at sentencing, the State did not make an issue of the need for a connection between Baggs's conduct and Hinds's recklessness. In fact, the State acknowledged that alcohol may have contributed to Hinds's recklessness. Although this probably does not rise to the level of a concession, the State's admission may reasonably have misled the court as to whether a causal connection was at issue, thus contributing to the inadequate findings.

Second, the "missing" finding of a connection appears to be implicit from a review of the record. A trial court's findings of fact and conclusions of law must be read as a whole.[18] A reviewing court may resort to the trial court's oral decision to interpret findings and conclusions if there is no inconsistency.[19]

Here, the court expressly found that Baggs provided alcohol to Hinds when he was underage and that she allowed him to drive her car. From these two findings, the court concluded that Baggs willingly participated in Hinds's commission of vehicular homicide to a significant degree. A reasonable reading of the findings and conclusions suggests that the court believed that Baggs's conduct significantly contributed to Hinds's reckless driving. The court's oral findings support this conclusion. The sentencing judge stated that he did not know why an adult woman would supply alcohol to an 18-year-old, and then entrust her car to him. The judge said, "Alcohol kills. Motor vehicles kill. They're implements of death, all too often, they're implements of death." Report of Proceedings at 25. The judge explained he was imposing an exceptional sentence "[b]ecause of the contributing to [sic] alcohol to a minor, entrusting a motor vehicle to that same minor, [and] either allowing and/or encouraging him to drive

---

[17]*See State v. Alvarez,* 128 Wn.2d 1, 19, 904 P.2d 754 (1995) (remand proper remedy where findings of fact and conclusions of law do not state ultimate facts, existence of which are apparent from record).

[18]*In re Hews,* 108 Wn.2d 579, 595, 741 P.2d 983 (1987).

[19]*State v. Moon,* 48 Wn. App. 647, 653, 739 P.2d 1157, *review denied,* 108 Wn.2d 1029 (1987).

. . . ." Report of Proceedings at 26. The judge also factored into his decision the statements of Kenneth Baggs, Cynthia Baggs and Carol Andrews. These comments are consistent with the court's written findings and conclusions and imply a connection between Baggs's conduct and Hinds's crime.

Moreover, the evidence suggests that Hinds was suffering from impairment that affected his ability to drive and that his impairment should have been apparent to Baggs. Hinds's blood alcohol level of .05 was more than double the presumptive impairment level for underage drivers. One witness detected a slight odor of intoxicants coming from the car; another heard Hinds talking and thought that he sounded drunk. Hinds told police he was drunk and underage. He also described his state of mind before the accident as "not totally coherent."

For all of these reasons, we remand for clarification of the court's findings. If the court finds a causal connection between Baggs's conduct and Hinds's reckless driving, we affirm the exceptional sentence; if it does not, we reverse and require imposition of a standard range sentence.

BECKER and ELLINGTON, JJ., concur.