IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31281-0-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JOSE JAVIER PERALTA MARTINEZ, | ) | |
| | ) | |
| Respondent. | ) | |

KORSMO, J. — The trial court imposed an exceptional sentence in this hit and run–fatality case after finding that the victim was a willing participant in the crime. We disagree with that characterization and reverse.

## FACTS

This tragic event was fueled, as so many of these cases are, by alcohol. The victim, Nicholas Marez, and the defendant, Jose Javier Peralta Martinez, were among a group of young men and women kicked out of a party after consuming alcohol. The group of seven left the event in a five passenger car owned and,

initially, driven by Mr. Marez. It was shortly after 2:00 a.m. Mr. Peralta Martinez left his father's car at the scene of the party.[1]

Mr. Peralta Martinez "egged on" Mr. Marez and was allowed to drive the vehicle. Sometime thereafter he wrecked the vehicle on a rural road three miles east of Sunnyside. The accident occurred after Mr. Peralta Martinez overcorrected when the car went onto the shoulder. All of the passengers were thrown from the car. Mr. Marez died at the scene before help arrived.

Mr. Peralta Martinez, who suffered injuries to one tooth and a finger, had the only telephone among the group. He lent the phone briefly to one of the passengers who attempted to call 911, but the call failed shortly after it was answered. The call was made at 3:36 a.m. Mr. Peralta Martinez then took the telephone back and walked away from the scene without rendering assistance to Mr. Marez or any of the others. One of the other passengers walked to a residence and 911 again was contacted. It was now about 4:00 a.m. Police eventually

---

[1] Mr. Peralta Martinez's father reported the car stolen; police recovered the car from the party location and saw evidence that it had been operated using a screwdriver. The police investigation of this report led to the evidence ultimately connecting Mr. Peralta Martinez to the hit and run. He had been unknown to the surviving passengers. Information concerning this part of the incident was included in the affidavit of probable cause that we allowed the State to file after argument in this case. We have not relied upon that information in reaching our decision, but only recite from it here to fill in background information. The findings in support of the exceptional sentence also relate that the trial judge considered the document.

located the accident scene and discovered Mr. Marez's body. The other passengers were transported to hospitals in Sunnyside and Prosser.

An investigation led to the arrest of Mr. Peralta Martinez more than 48 hours after the accident. The Yakima County Prosecuting Attorney charged him with one count of leaving the scene of a fatal accident and two counts of leaving the scene of an injury accident. The former charge is a class B felony, while the latter two counts were class C felonies.

A plea agreement was reached that allowed Mr. Peralta Martinez to plead guilty to the class B charge and the other two counts would be dismissed. The standard range was 31 to 41 months with no period of community supervision. The prosecutor agreed to recommend a standard range sentence of 33 months, while the defense was free to seek a first offender waiver of the presumptive sentence. The court accepted the agreement and the guilty plea. The matter was set over two months for sentencing.

The court heard testimony and argument at sentencing. The trial judge concluded that the first offender waiver was not appropriate given the facts of the case. The court did, however, declare an exceptional sentence and imposed a term of 16 months confinement and 24 months of community supervision. The court found four mitigating circumstances: (1) the sentence allowed Mr. Peralta Martinez to make full restitution; (2) to a significant degree, the victim was an initiator, willing participant, aggressor or provoker of the incident; (3) Mr. Peralta

3

Martinez had no prior criminal history and had a driving record showing one speeding infraction; and (4) community supervision was not provided for by statute.

Written findings were entered in support of the sentence.[2] The State then timely appealed the exceptional sentence to this court.

## ANALYSIS

The primary issue is whether Mr. Marez was a willing participant in the crime. We review that issue, as with all exceptional sentences, under long-settled statutory standards.

An exceptional sentence may be imposed if the trial court finds "substantial and compelling" reasons to go outside the standard range. RCW 9.94A.535. The trial court must enter written findings of fact and conclusions of law if it does impose an exceptional sentence. *Id.* A nonexclusive list of mitigating factors is recognized by statute. RCW 9.94A.535(1). However, an exceptional sentence above the standard range must be based on a recognized statutory factor. RCW 9.94A.535(2), (3).

Either party may appeal an exceptional sentence. RCW 9.94A.585(2). An exceptional sentence is reviewed to see if either (a) the reasons for the exceptional

---

[2] The trial court referred to the young people involved in the party as "underage." Nothing in the record provided for this appeal refers to the age of any of the participants other than Mr. Peralta Martinez, who was 21 at the time of the incident.

sentence are not supported by the record or do not justify an exceptional sentence, or (b) the sentence imposed is clearly excessive or clearly too lenient. RCW 9.94A.585(4). Thus, appellate courts review to see if the exceptional sentence has a factual basis in the record, is a legally justified reason, and is not too excessive or lenient. *State v. Law*, 154 Wn.2d 85, 93, 110 P.3d 717 (2005). Differing standards of deference or nondeference apply to those three issues. *Id.*

An exceptional sentence is appropriate when the facts of a case are atypical and result in harm either more or less egregious than the norm. *E.g., State v. Akin*, 77 Wn. App. 575, 892 P.2d 774 (1995) (escape was less egregious than typical, justifying mitigated sentence); *State v. Harmon*, 50 Wn. App. 755, 750 P.2d 664 (1988) (murder was more egregious than typical, justifying aggravated sentence). Mere judicial disagreement with presumptive punishment is not a basis for setting aside an exceptional sentence. *Law*, 154 Wn.2d at 95-96; *State v. Pascal*, 108 Wn.2d 125, 137-38, 736 P.2d 1065 (1987). The standard ranges reflect the legislative balancing of the purposes of the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW. *Law*, 154 Wn.2d at 95-96.

With this background, we turn to the challenges presented in this appeal. The State contends that the defendant's lack of criminal history cannot be a valid basis for imposing an exceptional sentence and, for several reasons, that the victim participation factor has no application to this case. The State does not expressly

5

address the other two bases for the exceptional sentence.[3] We address the criminal history factor before turning to the arguments concerning victim participation.

The SRA provides standard sentencing ranges based on the seriousness of the offense and the defendant's felony history. RCW 9.94A.530(1). Accordingly, the absence of prior convictions is a factor already considered by the legislature in its computation of the standard range for an offense when it created the offender score of "zero." For this reason, the absence of criminal history is not a basis for an exceptional sentence. *State v. Ha'mim*, 132 Wn.2d 834, 840-41, 940 P.2d 633 (1997); *State v. Freitag*, 127 Wn.2d 141, 144, 896 P.2d 1254 (1995). The trial court erred in basing an exceptional sentence in part on the defendant's absence of criminal history.

The parties primarily focused their arguments in this court on the victim participation mitigation factor. That provision reads:

---

[3] We question whether the need to make restitution and the absence of community supervision are valid mitigating factors. The legislature undoubtedly understood that it is more difficult to make restitution when an offender is imprisoned than when he or she is working in the community. The legislature also determined that community supervision was not necessary for this offense. Thus, on their face, these factors appear to reflect nothing other than disagreement with the policies chosen by the legislature, something that cannot be a basis for an exceptional sentence. *Law*, 154 Wn.2d at 95-96. Although a court can impose an exceptional term of community supervision, the parties have not provided any authority suggesting that a court can impose supervision where the legislature has not authorized it. We, therefore, do not opine on that issue.

> To a significant degree, the victim was an initiator, willing participant, aggressor, or provoker of the incident.

RCW 9.94A.535(1)(a).

"The 'willing participant' factor is applicable where both the defendant and the victim engaged in the conduct that caused the offense to occur." *State v. Hinds*, 85 Wn. App. 474, 481, 936 P.2d 1135 (1997) (citing DAVID BOERNER, SENTENCING IN WASHINGTON, § 9.12, at 9-21 (1985)). *Hinds* was a prosecution for vehicular homicide based on reckless driving behavior. There the defendant, 18 years old, had driven the victim's car recklessly after drinking, resulting in the death of the victim, who was 44 years old. *Id.* at 476. In addition to permitting the defendant to drive her car, the victim also had supplied alcohol to the underage driver. *Id.* This court concluded that the mitigating factor could apply to these facts if there was a link between the victim's conduct and the defendant's recklessness. *Id.* at 482. The court also restated the test as requiring a finding that "both the victim and the defendant caused the offense to occur." *Id.* at 483. The court analogized to proximate causation and determined that if the victim's "conduct was a but-for and legal cause of Hinds's reckless driving, she significantly participated in the offense." *Id.* at 483-84. The case was remanded for the trial judge to clarify whether there was causal link between the victim's behavior and the defendant's. *Id.* at 487.

7

Another case applying this mitigating factor was *State v. McKee*, 141 Wn. App. 22, 167 P.3d 575 (2007). There, the defendant was convicted on separate counts of raping two prostitutes who had willingly entered the defendant's truck to perform acts of prostitution. *Id.* at 28-29. Instead, the defendant raped each woman at gunpoint. *Id.* at 28. The trial court granted an exceptional sentence below the standard range on the basis of the victims' willing participation in the crimes. *Id.* at 29-30. This court reversed, concluding that although the victims had agreed to consensual activity with the defendant, they had not agreed to rape at gunpoint and were not willing participants in the crimes. *Id.* at 34.

The elements of felony hit and run–fatality are that the defendant: (1) drove a vehicle in the State of Washington; (2) was involved in an accident; (3) death or injury to a person occurred; and (4) the driver failed to stop immediately, remain at the scene, and perform the statutory duties of providing aid and giving notice. RCW 46.52.020; *see State v. Komoto*, 40 Wn. App. 200, 206, 697 P.2d 1025 (1985). The statute "'imposes upon the driver of a vehicle a positive, affirmative course of action; it specifically designates several acts following the accident which the operator must do to avoid the statutory penalty.'" *State v. Vela*, 100 Wn.2d 636, 639, 673 P.2d 185 (1983) (quoting *State v. Martin*, 73 Wn.2d 616, 625, 440 P.2d 429 (1968)). It is the failure to provide assistance after the accident that creates criminal liability. *Id.* at 640. Liability is not premised on the

defendant's driving or any fault in causing the accident. *State v. Perebeynos*, 121 Wn. App. 189, 194-95, 87 P.3d 1216 (2004).

Washington courts have not previously considered the victim participation mitigation factor in a felony hit and run case. The trial court here appeared to find the victim's participation in the offense was "significant" due to his drinking with the defendant and personally driving in a reckless manner prior to permitting the defendant to drive. For several reasons, these facts do not establish a causal link between the victim's participation and the crime.

Initially, the court's reasoning is inconsistent with its determination that the accident occurred because Mr. Peralta Martinez overcorrected after driving onto the shoulder. There is nothing in this view of the accident as suggesting that it resulted from any bad behavior by defendant, thus making any bad behavior by the victim irrelevant.

Second, there also is nothing to suggest that the accident occurred as a result of Mr. Marez's earlier actions. The fact that Mr. Marez had driven recklessly earlier in the evening does not appear causally connected to Mr. Peralta Martinez's driving. Even if Mr. Marez had modeled reckless driving behavior, Mr. Peralta Martinez has never contended that he, therefore, drove in a similar manner.

Third, any bad driving by either Mr. Marez or Mr. Peralta Martinez simply was not related to the failure to provide aid. The focus of a hit and run charge is

on the driver's behavior *after* an accident. Mr. Marez, who was unresponsive and, perhaps, already deceased, did not contribute in any manner to Mr. Peralta Martinez's decision to flee without aiding the accident victims. We do not agree with the State's argument that the victim participation mitigation factor can never apply to a fatality hit and run charge because we can conceive of situations where, prior to death, the victim might contribute to the defendant's decision to flee. However, we do agree that the victim participation mitigating factor in a hit and run charge must necessarily relate to the defendant's failure to satisfy the postaccident duties. It is the failure to satisfy those duties that is the essence of the crime of hit and run, and it is those duties that distinguish hit and run from other criminal or noncriminal driving behavior. Unless the victim's participation relates to the unique aspects of the crime, there simply was no participation in the offense of hit and run.[4] That is the case here.

The most that can be said is that Mr. Marez drank with Mr. Peralta Martinez and then entrusted his car to him.[5] While that trust was shown to be

---

[4] *Hinds* is particularly constructive because the focus there was on the connection between the victim's behavior and the defendant's *recklessness*, which was the charging theory for the vehicular homicide count. The court's analysis did not apply the mitigating factor merely because the victim had supplied alcohol and entrusted her car to the defendant, but instead required the trial court to find a causal connection between that behavior and the reckless driving that constituted the crime. 85 Wn. App. at 487.

[5] According to Professor Boerner, this type of behavior would establish victim participation in vehicular homicide. DAVID BOERNER, SENTENCING IN WASHINGTON, § 9.12, at 9-21 (1985).

10

fatally misplaced, it did not amount to Mr. Marez contributing to Mr. Peralta Martinez's decision to flee from the accident without aiding the six injured people he left behind. Mr. Marez's behavior did not cause Mr. Peralta Martinez's behavior. Without a showing that both the defendant and the victim caused the crime, there is no victim participation in the offense. *McKee*, 141 Wn.2d 22; *Hinds*, 85 Wn. App. 474. That is the situation here. The trial court erred in relying upon the victim participation mitigation factor.

When an exceptional sentence is imposed in reliance on an invalid factor, remand is required unless the trial court would have imposed the same sentence absent the invalid factor. *E.g., State v. Hooper*, 100 Wn. App. 179, 188, 997 P.2d 936 (2000). Remand for a new sentencing proceeding is required here.

Reversed and remanded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Brown, A.C.J.

Fearing, J.

11