IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 39002-1-III |
| | ) | (consolidated with |
| Respondent, | ) | No. 39003-9-III) |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| KYLE L. PAYMENT, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Kyle Payment appeals his convictions for second degree assault (two counts), third degree assault, and second degree malicious mischief; his 199-month sentence; and his term of community custody. We reject Mr. Payment's challenges to his convictions and his claim that the sentencing court committed legal error in rejecting his argument for an exceptional sentence downward. However, we agree with Mr. Payment that he is entitled to relief on the following issues: (1) reduction of the term of community custody for third degree assault to comport with the statutory maximum; (2) reconsideration of the State's request for an exceptional sentence upward; and (3) reassessment of two legal financial obligations—the crime victim penalty assessment and interest on restitution—to comply with recent statutory changes.

FACTS

Kyle Payment is an inmate in the custody of the Department of Corrections

(DOC). In 2020 and 2021, Mr. Payment was involved in two separate incidents in which

he assaulted DOC counselors and another inmate. The incidents resulted in property

damage as well as extensive physical injuries to the victims. The State brought charges

against Mr. Payment and the parties eventually reached an agreement whereby

Mr. Payment would plead guilty to two counts of second degree assault, one count

of third degree assault, and one count of second degree malicious mischief. The

agreement contemplated a contested sentencing, at which both Mr. Payment and the

State would argue for exceptional sentences and the defense would seek a mental health

sentencing alternative (MHSA). The parties stipulated Mr. Payment would be permitted

to call a psychiatrist to testify on his behalf as an expert witness at his sentencing hearing.

As relevant here, the guilty plea statement signed by Mr. Payment advised him that

his third degree assault charge "carrie[d] a . . . *Standard Sentence Range*" including

51 to 60 months of confinement and a community custody term of 12 months, and that

the maximum sentence was 5 years. Clerk's Papers, *State v. Payment*, No. 39003-9-III

(2 CP) at 126 (boldface omitted). During his plea hearing, the court advised Mr. Payment

2

that his standard sentencing range was 51 to 60 months and that there was a "possible" 12-month term of community custody. Rep. of Proc. (RP) (Apr. 1, 2022) at 9.

In advance of the plea and sentencing hearing, the State filed a memorandum arguing for an exceptional sentence upward, citing the so-called "free-crimes" aggravator. *See* RCW 9.94A.535(2)(c).[1] The State urged the trial court to impose the high end of the standard range on each charge and to run the sentences consecutively. The State further argued Mr. Payment was not a suitable candidate for an MHSA.

In Mr. Payment's sentencing brief, he asked the court to impose an MHSA and, in the alternative, to impose an exceptional sentence below the standard range. Mr. Payment cited two statutorily enumerated mitigating circumstances: first, he claimed his "capacity to appreciate the wrongfulness of his . . . conduct, or to conform his . . . conduct to the requirements of the law, was significantly impaired," RCW 9.94A.535(1)(e), and second, he argued the "presumptive sentence" was "clearly excessive," RCW 9.94A.535(1)(g). Mr. Payment argued that he was caught in a vicious cycle of behavioral problems leading to continuous incarceration, and he desperately needed help that he was not getting due

---

[1] "The trial court may impose an aggravated exceptional sentence without a finding of fact by a jury [if] . . . [t]he defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished." *Id*.

3

to his current prison classification. Mr. Payment further claimed that prolonged solitary confinement had impaired his ability to conform his conduct to the law. If the court was not inclined to impose an MHSA, Mr. Payment requested an exceptional sentence downward of 90 days on each charge, to run concurrently.

At sentencing, the court received lengthy testimony from Mr. Payment's expert, a board-certified psychiatrist. The expert testified as to Mr. Payment's mental health diagnoses, along with the horrendous circumstances surrounding Mr. Payment's youth and time in custody. The expert pointed out that Mr. Payment had been incarcerated almost continuously since 1999, when he was 13 years old, and that he had spent most of his adult life in solitary confinement. According to the expert, Mr. Payment's vulnerability as a child coupled with his extensive exposure to solitary confinement significantly impaired his ability to conform his conduct to legal expectations. The expert expressed concern that Mr. Payment might spend the rest of his life in solitary confinement.

During the State's presentation, the prosecutor mentioned Mr. Payment's history of "upwards of 475 serious infractions while he's been incarcerated," referencing a DOC presentence investigation report. RP (Jun. 1, 2022) at 78; *see* Clerk's Papers, *State v. Payment*, No. 39002-1-III (1 CP) at 224-25. The prosecutor also described

4

Mr. Payment as a "master manipulator" with a "long-standing history of assaultive behavior," arguing that "when he decides he's going to assault someone, he doesn't care who it is. . . . [H]e doesn't care about them as a person." RP (Jun. 1, 2022) at 80. The prosecutor reiterated the State's opposition to an MHSA and its request for an exceptional sentence upward. The prosecutor also cited the applicability of the free-crimes aggravator, contending that "[i]f we run any of this concurrent, he's getting away with it for nothing." *Id.* at 83-84.

In his statement to the court, Mr. Payment apologized to one of his victims who was present in the courtroom. Notwithstanding his counsel's arguments for an exceptional sentence downward, Mr. Payment further stated, "I would argue that the exceptional sentence downward is inappropriate because it provides for nothing." *Id.* at 120. He elaborated: "[I]f you're throwing me to the wolves, I wouldn't be surprised if I came back. For me, I think the [MHSA] is the only solution . . . ." *Id.*

The court then proceeded to its ruling. The judge acknowledged that Mr. Payment had experienced "horrific things" and that the DOC's purported mishandling of his mental health treatment was "a tragedy." *Id.* at 124-25. Nevertheless, the court opined the testimony of Mr. Payment's psychiatrist expert constituted arguments for broader prison reform rather than leniency in this specific case.

The judge rejected Mr. Payment's request for an MHSA, reasoning that, to be eligible for such a sentencing alternative, a defendant must be "willing to participate" in the program. *Id.* at 125; *see* RCW 9.94A.695(1)(d). The judge reasoned that:

> Mr. Payment is not able to modulate his behavior and be compliant. That is apparent in . . . the 475 violations with DOC while he was incarcerated. And it begs the question, how can you treat somebody if they're not able to comply.
>
> . . . .
>
> I don't doubt that Mr. Payment needs some mental health treatment. But this sentencing alternative is contingent on compliance coming first.

*Id.* at 126-27. The judge moved on to Mr. Payment's term of confinement:

> The sentencing that the Court is looking at today is going to be a sentence that keeps in mind that these are very significant crimes against persons that Mr. Payment committed. And I know he's aware he committed them. He [pleaded] guilty to them. I appreciate very much the apology to [one of the victims] and his family in court today. But it doesn't diminish the fact that these were significant offenses perpetrated against individuals with really very little thought to what the consequence was going to look like.
>
> Mr. Payment is a very intelligent man. And despite the fact that he might suffer from impulse control and a tendency to anger quickly, he understood what the result or the consequences of his behavior was going to be. And in this particular case I cannot turn a blind eye to the fact that there are victims who will suffer significant, long-term effects as a result of Mr. Payment's actions.
>
> . . . .
>
> The State, first of all, is asking me to run those sentences consecutive. And I will indicate that under the [free-crimes aggravator] statute, . . . [Mr. Payment] has committed multiple current offenses, and [Mr. Payment]'s high offender score results in some of the current offenses going unpunished.

If I were to run these sentences . . . concurrently, it would simply take the highest number of months within the standard range for one count and encompass everything else within it. In essence, as [the prosecutor] indicated, that would be free crimes.

What I am choosing to do is recognize that each of these crimes, each of these charges does come with it a consequence that needs to be paid by Mr. Payment for his actions against these individuals in each of their capacities. This does meet the criteria under the statute to find an exceptional upward sentence to order the sentences to run consecutive. And I am going to do that.

*Id.* at 128-29.

Although the court granted the State's request to run Mr. Payment's sentences consecutively, it opted not to impose the high end of the standard range as to each count. Instead, the court imposed the low end of the standard range for each charge, to run consecutively, for a total of 199 months' confinement. The court found Mr. Payment was indigent, but noted the $500 crime victim penalty assessment would be imposed in each of the two cases, along with restitution.

The court subsequently entered a written judgment and sentence in each case, imposing a total of 199 months' confinement[2] and noting that it had found substantial and compelling reasons to justify an exceptional sentence above the standard range.

---

[2] As relevant to this appeal, the court sentenced Mr. Payment to 51 months' confinement for third degree assault, noting that the maximum sentence for that crime was 5 years.

The court ordered Mr. Payment to pay $60,881.28 in restitution, including interest at the

rate applicable to civil judgments. The court further sentenced Mr. Payment to 18 months'

community custody pursuant to his convictions for second degree assault, but did not

specify a community custody term for third degree assault.

In addition to the judgment and sentence, the court entered a written document

entitled, "Findings of Fact and Conclusions of Law Re: *Exceptional Above Sentence*."

1 CP at 154-56; 2 CP at 275-77. The written findings included details about Mr.

Payment's criminal history. In addition, there was a finding that Mr. Payment "has had

475 serious infractions while an inmate of the [DOC]." 1 CP at 155; 2 CP at 276. There

was also a finding that Mr. Payment "committed significant crimes against persons with

little thought of the consequences." *Id*. In its conclusions of law, the court referenced the

free-crimes aggravator, RCW 9.94A.535(2)(c), as a basis for imposing an exceptional

sentence upward, and incorporated its "oral findings and conclusions" from the

sentencing hearing. 1 CP at 155-56; 2 CP at 276-77.

Mr. Payment separately appealed from each judgment and sentence.[3] Months after

Mr. Payment initiated his appeals, the trial court entered an order clarifying its judgment

and sentence. The order stated Mr. Payment would serve 18 months' community custody

---

[3] This court later granted Mr. Payment's motion to consolidate his two appeals.

given his convictions for second degree assault, but that his third degree assault

conviction carried a term of 12 months' community custody.[4] This court, citing

RAP 7.2(e), granted the State's unopposed motion to authorize the superior court to

enter the postappeal order.

## ANALYSIS

*Length of sentence for third degree assault*

Mr. Payment contends, and the State concedes, that the 12-month term of

community custody for third degree assault must be adjusted downward because it causes

the total sentence to exceed the statutory maximum term of 5 years. We accept the State's

concession and remand to correct this error.

As a crime against persons, a conviction for third degree assault typically

requires a 12-month term of community custody. *See* RCW 9.94A.701(3)(a);

RCW 9.94A.411(2)(a). But this rule must yield when imposition of the 12-month

term would cause a defendant's total sentence—incarceration plus community custody—

to exceed the statutory maximum sentence for the crime of conviction. *See*

RCW 9.94A.505(5); RCW 9.94A.701(10). When imposition of the usually-required

---

[4] The terms of Mr. Payment's community custody shall run concurrently because the sentencing court did not state otherwise. *See* RCW 9.94A.589(2)(a).

community custody term would result in an excessive sentence, the court must reduce the term of community custody so that the total sentence will fall within the statutory maximum. RCW 9.94A.701(10).

The maximum sentence for third degree assault is 5 years, or 60 months. *See* RCW 9A.36.031(2); RCW 9A.20.021(1)(c). Because the trial court sentenced Mr. Payment to 51 months' confinement for third degree assault, it could not impose a 12-month term of community custody for that crime. Instead, the maximum possible term of community custody was 9 months. We remand with instructions to correct the term of community custody as to third degree assault.

## Validity of guilty plea

Mr. Payment contends his guilty pleas were invalid in violation of his right to due process because he was misinformed as to a direct consequence of his plea. Specifically, he faults the trial court for advising him that 12 months of community custody applied to his third degree assault charge, given that, if the court imposed a standard-range sentence, the longest term of community custody he could have lawfully received was 9 months. The State counters that the court correctly informed Mr. Payment that third degree assault ordinarily carries a term of 12 months' community custody, a term the court would have

been bound to impose if it granted Mr. Payment's impending request for an exceptional

sentence downward. We agree with the State.

Before a court may accept a guilty plea, the defendant must be informed of all

"direct consequences" flowing from the plea, including standard terms of confinement

and community custody. *State v. Gregg*, 196 Wn.2d 473, 483, 474 P.3d 539 (2020); *see*

*In re Pers. Restraint of Quinn*, 154 Wn. App. 816, 820, 836, 841, 226 P.3d 208 (2010).

"Affirmative misinformation as to a direct consequence renders a plea constitutionally

invalid." *Gregg*, 196 Wn.2d at 484. Such misinformation renders a plea involuntary

regardless of whether the actual sentence is lower or higher than anticipated. *State v.*

*Buckman*, 190 Wn.2d 51, 59, 409 P.3d 193 (2018).

Mr. Payment was not misinformed about the consequences of his third degree

assault conviction. The trial court accurately advised Mr. Payment of the standard term

of community custody that could apply to his third degree assault charge. Although the

record indicated the standard 12-month term would not apply if Mr. Payment received

a standard-range sentence, the plea agreement materials indicated Mr. Payment would

be requesting an exceptional sentence downward. Had the court granted this request,

a 12-month term of community custody would have been possible, if not mandatory,

depending on the extent of the departure. It was therefore appropriate for the trial court

11

to advise Mr. Payment of the 12-month term. *See Buckman*, 190 Wn.2d at 59 (noting due process requires a defendant be advised of possible sentencing consequences at the time of plea).

*Exceptional sentence downward*

Mr. Payment claims the sentencing court abused its discretion in refusing to consider his request for an exceptional sentence downward. For our court to review this type of claim, Mr. Payment must show legal error such as a categorical refusal to consider an exceptional sentence downward, reliance on a constitutionally improper basis, or a failure to recognize discretion to deviate downward. *See State v. McFarland*, 189 Wn.2d 47, 56, 399 P.3d 1106 (2017); *State v. Garcia-Martinez*, 88 Wn. App. 322, 328-29, 944 P.2d 1104 (1997).

Mr. Payment has not established any basis for overturning the sentencing judge's denial of an exceptional sentence downward. The court did not categorically refuse to consider Mr. Payment's request. It listened to Mr. Payment's evidence and argument and, in its discretion, declined to impose a sentence below the standard range. There is no indication the trial court's rejection of an exceptional sentence downward rested on legal error or an improper consideration. We therefore must defer to the sentencing judge's decision.

*Exceptional sentence upward*

A sentencing judge's decision to grant an exceptional sentence request is reviewed with more scrutiny than a denial. *See* RCW 9.94A.585(4). As always, we will review claims of legal error de novo. *State v. Law*, 154 Wn.2d 85, 93-94, 110 P.3d 717 (2005). But we review the purported excessiveness of an exceptional sentence for abuse of discretion and the factual findings supporting the trial court's decision for clear error. *Id*. at 93.

The general rule is that a court may impose a sentence above the standard sentencing range only if aggravating facts have been proven to a jury beyond a reasonable doubt. RCW 9.94A.535, .537. A narrow exception exists for an upward departure based on the "fact of a prior conviction." RCW 9.94A.535; *see also State v. Alvarado*, 164 Wn.2d 556, 567-68, 192 P.3d 345 (2008).

Because it is based solely on criminal history, a permissible exception to the requirement of jury findings is the so-called free-crimes aggravator. *See Alvarado*, 164 Wn.2d at 567-68. This statutorily approved aggravator enables a court to impose a sentence above the standard range if "[t]he defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses

going unpunished." RCW 9.94A.535(2)(c). The free-crimes aggravator can be effectuated

by ordering multiple offenses to run consecutively. *See* RCW 9.94A.589(1).

Here, there is no dispute that the sentencing court could have imposed an

exceptional sentence upward without the need for any jury findings based on the

free-crimes aggravator. The parties disagree as to whether the trial court relied on

impermissible facts in reaching its exceptional sentencing decision. Mr. Payment

recognizes the court was allowed to consider facts that flowed directly from his criminal

history. *See Alvarado*, 164 Wn.2d at 567-68. But he claims the court went beyond this

scope of permissible information and based its exceptional sentencing decision, at least

in part, on factual findings regarding his DOC infraction history and his purported

indifference to the consequences of his actions.

The State acknowledges the sentencing court's written findings included facts

beyond Mr. Payment's criminal history that were never proven to a jury, but nevertheless

asks us to affirm. According to the State, the court's improper findings did not actually

inform its decision to impose an exceptional sentence. The State urges us to look to

the court's oral ruling. The State observes the sentencing judge's oral comments about

Mr. Payment's DOC infractions were made in the context of rejecting his MHSA request,

and claims the finding about Mr. Payment's indifference to his victims "related to

14

the reasons that it was declining an exceptional sentence below the standard range."

Br. of Resp't at 35. When issuing its oral ruling, the court did not expressly link

Mr. Payment's infraction history or indifference to his victims to the exceptional sentence

upward.

We reject the State's approach. The rule in Washington is that "[t]he written order

is controlling." *State v. Molina*, 16 Wn. App. 2d 908, 922, 485 P.3d 963, *review denied*,

198 Wn.2d 1008, 493 P.3d 731 (2021). "[T]he trial court's oral statements at sentencing

are no more than a verbal expression of its informal opinion at the time." *Id.* To be sure,

we "may resort to the trial court's oral decision to interpret findings and conclusions."

*State v. Hinds*, 85 Wn. App. 474, 486, 936 P.2d 1135 (1997). But "the trial court's oral

opinion cannot be used to impeach or contradict an unambiguous written finding."

*Shinn v. Thrust IV, Inc.*, 56 Wn. App. 827, 838, 786 P.2d 285 (1990).

Here, the court entered written factual findings explicitly designated as justifying

the exceptional sentence upward; no other purpose for the findings was specified. Given

the court decided to include findings about Mr. Payment's infraction history and his

indifference to his victims in its written justification for the exceptional sentence, we are

not satisfied the court "would have imposed the same sentence" without the inclusion

of the impermissible facts. *State v. Perry*, 6 Wn. App. 2d 544, 558, 431 P.3d 543 (2018).

It could be, for example, that had the court not considered the extraneous facts, it would have decided to run at least some of Mr. Payment's convictions concurrently. We must therefore remand for resentencing. Based on the nature of our disposition, resentencing shall be limited to reconsideration of the State's request for an exceptional sentence upward.

*Crime victim penalty assessment and interest on restitution*

The parties agree that, on remand, the sentencing court must reconsider two legal financial obligations. First, imposition of the crime victim penalty assessment must be stricken based on Mr. Payment's indigence. *See* RCW 7.68.035(4), (5)(b). And second, the sentencing court must exercise its discretion under RCW 10.82.090(2) on whether to waive interest on Mr. Payment's restitution obligation. We concur with the parties' agreement and remand for reconsideration of both financial obligations.

*Reassignment on remand*

Mr. Payment asks this court to order reassignment of this matter to a different trial judge on remand, baldly asserting that the appearance of fairness doctrine requires this remedy. We reject this request. Mr. Payment has not set forth any reason to question the sentencing judge's impartiality. Mere displeasure with an erroneous ruling is not a valid

reason for reassignment. *See State v. McEnroe*, 181 Wn.2d 375, 388, 333 P.3d 402 (2014).

## CONCLUSION

This matter is remanded for resentencing limited to the following issues: (1) reduction of the term of community custody for third degree assault so that the total sentence does not exceed the statutory maximum, (2) reconsideration of the State's request for an exceptional sentence upward pursuant to the terms of this opinion, (3) striking of the crime victim penalty assessment, and (4) reconsideration of the imposition of interest on restitution pursuant to RCW 10.82.090(2).

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

I CONCUR:

_____
Fearing, C.J.

17

No. 39002-1-III
(consolidated with No. 39003-9-III)

COONEY, J. (dissenting in part) — I concur with all but one of the majority's

conclusions. The trial court did not err by including extraneous facts in its "Findings of

Fact and Conclusions of Law Re: Exceptional Above Sentence—Appendix 2.4." Clerk's

Papers at 275 (emphasis and boldface omitted). Remand for resentencing is both

unnecessary and inordinately burdensome to the trial court.

At sentencing hearings, trial courts often receive and consider a significant amount

of information. RCW 9.94A.500. However, not all of the information is assigned equal

weight, nor does all the information underlie a court's decision to order an exceptional

sentence. Here, as properly recognized by the majority, the trial court made two findings

that are unrelated to the statutory basis for an unpunished crimes enhancement.[1]

However, the trial court gave no weight to the superfluous findings when it ordered Mr.

Payment to serve an exceptional sentence. Indeed, we need look no further than the trial

court's conclusions of law to ascertain the foundation of its decision. Accordingly, I

dissent in part.

In passing, we recently recognized that under RCW 9.94A.535(2)(c) a trial court

possesses the authority to impose consecutive standard range sentences when it finds

---

[1] The trial court's extraneous findings of fact included:

10. That the Defendant has had 475 serious infractions while an inmate of
the Department of Corrections.
11. That the Defendant has committed significant crimes against persons
with little thought of the consequences.

CP at 276.

1

"substantial and compelling reasons justifying" an exceptional sentence. *State v. Eller*, ___ Wn. App. 2d ___, 541 P.3d 1001, *1003 (2024). The statute allows a trial court to "impose an aggravated exceptional sentence without a finding of fact by a jury" if "[t]he defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished." RCW 9.94A.535(2)(c). Provided, however, that "[w]henever a sentence outside the standard sentence range is imposed, the court shall set forth the reasons for its decision in written findings of fact and conclusions of law." RCW 9.94A.535.

The question before us is not whether the record supports the trials court's exceptional sentence—indisputably it does. Rather, the question is whether the trial court assigned any weight to the two superfluous findings when it decided to order consecutive standard-range sentences. The remedy for superfluous findings of fact can vary based on the specific circumstances of the case. In certain situations, additional findings may not necessitate any remedial action at all. *See, e.g.*, *State ex rel. Zempel v. Twitchell*, 59 Wn.2d 419, 425, 367 P.2d 985 (1962). To date, a bright-line rule has not been established that would restrict a sentencing court from entering irrelevant findings, provided one or more of the court's findings justifies the exceptional sentence. Consequently, it becomes unnecessary to remand for resentencing when a trial court demonstrates it imposed an exceptional sentence based on a valid statutory basis.

However, if the reviewing court deems that the trial court placed "considerable weight" on invalid factors during sentencing, remanding for resentencing may be warranted. *State v. Fisher*, 108 Wn.2d 419, 429-30, 430 n.7, 739 P.2d 683 (1987). Considerable weight can be inferred from the imposed sentence length and from the strength of the remaining valid factors. *See, e.g.*, *State v. Dunaway*, 109 Wn.2d 207, 220, 743 P.2d 1237 (1987); *State v. Gaines*, 122 Wn.2d 502, 512, 859 P.2d 36 (1993).

Here, the free-crimes aggravator indubitably provided the trial court authority to order an exceptional sentence. The trial court ordered the low end of the standard-range sentence for each conviction. The exceptional sentence was presented in the form of consecutive standard-range sentences. The trial court clearly announced in its conclusions of law that the exceptional sentence was based on the free-crimes aggravator. Conspicuously absent from the trial court's conclusions of law is any reference to the two extraneous findings of fact.

Under the guise of a resentencing, the majority is essentially directing the trial court to excise two superfluous findings from its findings of fact. *Fisher*, 108 Wn.2d at 430 n.7. Because the trial court did not assign any weight to the extraneous findings, as evidenced by its conclusions of law, remanding for resentencing is both unnecessary and begets an unwarranted strain on an already overburdened trial court.

Cooney, J.

3